**GULF, COLORADO AND SANTA FE RAILWAY COMPANY, Appellant,**

v.

**G. C. McBRIDE et al., Appellees.**

**No. 3352.**

Court of Civil Appeals of Texas.

Eastland.

Jan. 24, 1958.

Rehearing Denied Feb. 14, 1958.

plaintiff. Plaintiff sought judgment against Central Surety and Insurance Company on a performance bond given by McBride, to recover any amount which it was held liable to pay as surety on the bond. Plaintiff railway company and McBride both filed motions for summary judgment. After a hearing the court overruled plaintiff's motion, but granted the motion of McBride and accordingly entered judgment that plaintiff take nothing in its suit against McBride. Since the action of the court adversely disposed of plaintiff's right to recover under the surety bond, the court also entered a take-nothing judgment in favor of the Central Surety and Insurance Company. Gulf, Colorado and Santa Fe Railway Company has brought this appeal in which it complains of the take-nothing judgment against it and also of the action of the court in overruling its motion for summary judgment against appellees.

The record shows without dispute that on October 28, 1952, and for some time prior thereto, appellant railway company owned certain land in Brown County, Texas, upon which it constructed a rock crusher and necessary facilities and equipment in connection therewith for the production of crushed rock, screenings, rip rap and other similar type materials.

On October 28, 1952, appellant railway company leased its rock crushing plant and the land and facilities in connection therewith to appellee McBride, who was an experienced quarry and crusher operator. The lease agreement referred to and identified the land, quarry, rock crusher and appurtenant equipment and facilities as the "plant". By the terms of the lease appellant railway company had the right to purchase from McBride all of the output of the plant for use by appellant on any of its railway lines including the entire Santa Fe system. The right of appellant to purchase the material produced at the plant was at an agreed price per cubic yard of different specified materials, loaded on cars direct from the crusher bins, all f. o. b. cars at the plant. Under the terms of the lease con-

Woodruff & Holloway, Brownwood, Hudson, Keltner & Sarsgard, Ft. Worth, for appellant.

McMahon, Smart, Sprain & Wilson, Abilene, Richey, Sheehy & Teeling, Waco, for appellees.

COLLINGS, Justice.

This is a summary judgment case. Gulf, Colorado and Santa Fe Railway Company brought suit against G. C. McBride, d/b/a G. C. McBride Company, and against Central Surety and Insurance Company. The plaintiff railway company sought recovery against G. C. McBride under an indemnity provision of a lease contract and under the right to common law indemnity for the amount paid by plaintiff to its employee, C. F. England, Jr., as the result of injuries he sustained while switching railroad cars on the premises leased by McBride from

tract McBride was to quarry and process for commercial purposes only such materials as constituted surplus output over and above the requirements of appellant for the Santa Fe system. By the terms of the lease appellee McBride also agreed:

"To release and discharge railway company from all liability because of loss of or damage to contractor's property, and to indemnify and save railway company harmless from liability because of loss or damage to the property of others whomsoever, and injury to or death of persons whomsoever arising from, growing out of or in any manner incident to the use, operation, maintenance or state of repair of the *'plant'*, except loss or damage caused by fire not the result of the negligence of contractor or its employees; and to promptly repay any sum or sums which railway company *may pay,* or *be compelled to pay,* and discharge any judgment or judgments which may be rendered against it because thereof."

It is undisputed that on April 10, 1954, the above contract was in full force and effect. On that date C. F. England, Jr., who was employed as an engine foreman by appellant railway company sustained an injury in the discharge of his duties for the company. The injury occurred while he was engaged in the process of switching a number of empty railway cars to the storage area of the plant for the use of appellee McBride. At the time of his injury England was climbing the loading ramp at the plant for the purpose of transmitting signals between the switchman and the engineer. He was trying to get over a large timber which was on the ramp, and in doing so fell and thereby received personal injuries to his body. He made claim against appellant railway company under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. Appellant settled the claim and brought this suit against McBride and the surety on his bond under the above quoted terms of the lease contract to recover the amount paid to England.

It is urged in appellant's first point that the Court erred in entering the summary take-nothing judgment against appellant for the reason that there is at least a genuine issue of fact to be decided. The point is well taken. Appellees' contention that the court properly entered the summary take-nothing judgment against appellant is based on the assumption that the injury to England did not arise from, grow out of and was not in any manner incident to the use, operation and maintenance or state of repair of the "plant", and was not, therefore, within the terms of the indemnity agreement. Appellees urge that the injury to England occurred on the "spur track"; that under the indemnity agreement appellee is not liable for injuries arising, growing out of or incident to the maintenance or state of repair of the spur track, but only for injuries arising, growing out of, or incident to the maintenance and state of repair of the "plant".

It is undisputed that the injury to England was sustained while he was climbing the loading ramp and that it did not occur on the spur track or arise out of the manner of maintenance or state of repair of the spur track. The evidence, as least, raises a fact issue as to whether the injury sustained by England was one arising from, growing out of or incident to the maintenance or state of repair of the "plant".

The evidence shows that the ramp was located on land included in the "plant" leased to appellee McBride for the purpose of the production of crushed rock and other materials mentioned in the lease contract. The ramp was a facility of the plant and was used by appellee in the operation of the plant. The ramp was adjacent to the spur track which ran to the storage area of the plant and was used by appellee McBride to dump rock from his trucks into the railroad cars. As a "facility" of the plant, it was by the terms of the lease agreement a part of the plant. Appellees had the duty under the contract to maintain the plant. The evidence shows that appellee recognized and accepted this duty as including the

maintenance of the ramp as a part of the plant. It was customary for employees of the railway company to climb the ramp to pass signals and this fact was known to appellee. The evidence indicates that a large timber was located on the ramp at the time England sustained his injury. His injury occurred when he stumbled over this timber, and the presence of the timber on the ramp was apparently the cause of his injury.

■ We are likewise unable to agree with appellees' contention that the indemnity provision of the contract was only intended to cover liability of appellant railway company to third persons and does not cover injuries to employees of appellant. The indemnity provision provides that appellee will indemnify the railway company "from liability because of * * * injury to or death of *persons whomsoever* * * *." (Emphasis ours.) This provision obviously covers any person, including employees of appellant, who sustain injury in a manner and under the conditions specified in the contract, that is, "injury * * * arising from, growing out of, or in any manner incident to the * * * maintenance or state of repair of the plant * * *". Appellant's first point is sustained.

■ It is urged in appellant's second point that the court erred in overruling its motion for summary judgment against appellees. We cannot agree with this contention. The burden of proof was on appellant to prove all material elements of its alleged cause of action against McBride. The contract provided for and established McBride's liability for any sum which appellant "may pay or be compelled to pay" because of any "liability" appellant might have arising from or growing out of the "* * * maintenance or state of repair of the plant * * *". Appellee's promise to indemnify and to repay appellant for any sum which it "may pay * * *" is thus limited to sums paid because of liability on

the part of appellant, growing out of the matters specified.

There is no dispute about the fact that appellant's employee, England, was injured at the plant while climbing the loading ramp when he attempted to go over a large timber, and that appellant railway company paid England $8,495 in settlement of his claim based upon such injury. There remained, however, controverted fact issues concerning appellant's liability to England including the extent or amount of such liability, as well as the reasonableness of the amount paid. 42 C.J.S. Indemnity § 35, pp. 626, 627. We understand that appellant admits the general rule to be as above stated. Appellant urges, however, that the indemnity provision of the contract, here involved, authorized appellant to settle any claim arising under the indemnity agreement. Appellant's right under the contract to settle England's claim is unquestioned, but the right to recover from appellees the amount which it paid England depends upon a showing of its liability to England and the extent of such liability. Appellant cites Central Surety and Ins. Corp. v. Martin, Tex.Civ.App., 224 S.W.2d 773, 775 (RNRE), wherein it is held that a surety company in a fidelity bond to an employee's employer for the amount of the alleged shortage, that the employee was bound under the terms of the contract to reimburse the company without the necessity of the company proving its liability under the bond. As stated in that case the nature of the liability of an indemnitor must be determined by the provisions of the indemnity contract. An examination of the contract in that case reveals that it is to be distinguished from the one now before us. The contract in that case provided that the indemnitor would pay to the indemnitee all sums and amounts of money which the corporation or its representatives "shall pay or cause to be paid or become liable to pay", and further provided as follows:

"I further agree that in any accounting which may be had between me and the corporation, the *corporation shall be*

*entitled to credit for* any and *all disbursements in and about* the *matters herein contemplated, made* by it *in good faith under the belief that it is or was liable for the amount so disbursed* or that it was necessary or expedient to make such disbursements, *whether such liability*, necessity or expediency *existed or not.*" (Emphasis ours.)

The quoted language of the contract in the cited case obviously gave the surety company the right to recover the amount paid by it in good faith. No such language as the above appears in the contract between appellant and McBride. Under the contract appellant is not entitled to recover from McBride without showing its liability to England, and there are controverted fact issues on that question. The court did not err in refusing appellant's motion for summary judgment.

The judgment of the trial court is reversed and the cause remanded.

WALTER, J., disqualified and not sitting.