GULF, COLORADO & SANTA FE RAILWAY COMPANY V. G. C. MCBRIDE ET AL.

No. A-6759. Decided October 22, 1958.
Rehearing overruled March 25, 1959.
Further motion for rehearing overruled April 22, 1959.
(322 S.W. 2d Series 492)

*Woodruff & Holloway,* of Brownwood, *Hudson, Keltner & Sarsgard* and *Joe Bruce Cunningham,* of Fort Worth, for petitioner.

The Court of Civil Appeals erred in holding that petitioner was not entitled to judgment to recover from respondent, and

that trial court erred in overruling petitioner's motion for summary judgment. Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W. 2d 1055; Chicago, R. I. & P. Ry. Co. v. Bobry Flour Mills, 211 Fed. 2d 785; Stafford v. Wilkinson, 157 Texas 483, 304 S.W. 2d 364.

*McMahon, Smart, Sprain & Wilson, Marvin S. Sprain* and *J. M. Lee*, all of Abilene for respondent.

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

This is a suit in which a summary judgment in favor of respondents was given by the trial court. The suit involves liability under an indemnity contract and kindred issues.

The petitioner, hereinafter called Santa Fe, on October 28, 1952 owned a certain tract of land near Brownwood, Texas. On a part of this tract Santa Fe owned and operated a rock crusher plant which made crushed rock, screenings, rip-rap and other similar material. Santa Fe also owned certain spur tracks which were used in the rock crushing business and the transportation of the finished product from the plant to its place of use.

G. C. McBride, d/b/a as G. C. McBride Co., hereinafter called McBride, was experienced in the business of rock crushing. On October 28, 1952 Santa Fe and McBride entered into a lease agreement whereby the land owned by Santa Fe, together with the rock crusher and its equipment, was leased to McBride for a term of years upon the terms and conditions set out in the agreement. The contract had attached thereto a plat showing the land leased to McBride together with an inventory listing all machinery, equipment and supplies leased. The first paragraph of the lease defined the "plant" as the land shown by the plat and the machinery listed in the inventory.

The spur track was shown on the plat as part of the property leased. Located on this spur track and on the land shown on the plat was a loading ramp some ten or twelve feet above the level of the spur track. In conducting switching operations in, on and around the "plant" there were times when the operating employees of Santa Fe had to climb upon the loading ramp in order to transmit signals to the train crew. This practice was well known to McBride, and no objection or protest was made to such procedure.

On April 10, 1954, C. F.England, Jr., who was employed as

an engine foreman by Santa Fe—while climbing this ramp for the purpose of transmitting signals to a switching crew—fell and sustained serious injuries to his back. As a result of the injuries received it was necessary to perform a serious operation on his back. England was unable to work for approximately 18 months, and he was making from $400.00 to $450.00 per month at the time of his injury. He lost in wages alone some $7,500 as a result of his inability to work. England made a claim against Santa Fe under the Federal Employees' Liability Act, 45 U. S. C. A., Sec. 51, et seq.

On April 25, 1956, Santa Fe sent a letter to McBride notifying him of the nature and extent of England's injury and asked McBride to take over the handling of England's claim for damages, or to authorize Santa Fe to handle the same for the account of McBride. On July 31, 1956, McBride notified Santa Fe that he would not take over the claim and denied any liability under the indemnity agreement. Santa Fe on this same date settled England's claim for the sum of $8,495.00. Santa Fe thereafter filed this suit against McBride and respondent, Central Surety and Insurance Corporation, who had signed a performance bond with McBride that he would carry out the lease contract.

McBride denied any liability under the indemnity provision of the contract upon various grounds. Surety Corporation filed a general denial and adopted the answer of McBride. Santa Fe and McBride each filed unverified motions for summary judgment upon the pleadings, depositions of England, depositions of E. A. McBride and a stipulation of facts entered into between the parties. The trial judge overruled Santa Fe's motion for summary judgment and sustained McBride's motion. As a result judgment was entered that Santa Fe take nothing against McBride, and it naturally followed judgment was rendered in favor of the Surety Corporation. This was reversed and the cause remanded by the Court of Civil Appeals. 309 S.W. 2d 846.

■ One of McBride's defenses—and a ground urged in his motion for summary judgment—was that the injury to England did not arise from, grow out of and was not in any manner incident to the use, operation and maintenance or state of repair of the plant, and was not, therefore, within the terms of the indemnity agreement. McBride, in his reply to the application for writ of error, says "the Court of Civil Appeals held that the injury suffered by England came within the terms of the indemnity agreement upon which plaintiff based its cause

of action." Santa Fe also states this was the holding of the Court of Civil Appeals on this point. Both parties so construe the opinion of the Court of Civil Appeals, and we agree. Respondents have not appealed from this holding.

The indemnity agreement, in so far as it is pertinent to our cause, reads as follows: McBride agreed "to release and discharge railway company from all liability because of * * * injury to or death of persons whomsoever * * * and to promptly repay any sum or sums which railway company *may pay* or *be compelled to pay,* and discharge any judgment or judgments which may be rendered against it because thereof." (Emphasis added). McBride claims he is not liable because Santa Fe made a voluntary payment to England without any judicial ascertainment of Santa Fe's liability to England and McBride seeks to uphold that part of the Court of Civil Appeals' opinion holding that in this suit for indemnity, Santa Fe must establish its liability to England before it can recover from McBride. In this holding the Court of Civil Appeals was in error.

In our recent case of Mitchell's, Inc. v. Friedman, 157 Texas 424, 303 S.W. 2d 775 (1957), we held that where an indemnitor denies any obligation under the indemnity agreement and obtains a summary judgment, the indemnitor waives any right to insist upon a judicial determination of the liability of the indemnitee to the injured party. As to the status of the indemnitee in a case wherein a settlement was made with the injured party, *after denial of liability on the part of the indemnitor,* we said:

"* * * Having settled the claim without obtaining a judicial determination of its liability, petitioner assumed the risk of being able to prove the facts which *might* have rendered it liable to the plaintiff as well as the reasonableness of the amount which it paid. It will be necessary, therefore, for petitioner to establish that from its standpoint the settlement was made in good faith and was reasonable and prudent under the circumstances. See Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W. 2d 1055; Thermopolis Northwest Electric Co. v. Ireland, 10 Cir., 119 Fed. 2d 409; St. Louis Dressed Beef & Provision Co. v. Maryland Casualty Co., 201 U.S. 173, 26 Sup. Ct. 400, 50 L. Ed. 712." (Emphasis added).

In the case of Luton Mining Co. v. Louisville & N. R. Co., 276 Ky. 321, 123 S.W. 2d 1055, cited by us in the above case, the Court, in speaking of a voluntary settlement made by the

railway company which was seeking indemnity from the mining company, said, "* * * As appellant [mining company] denied liability under this contract, the railroad company was justified in making reasonable and prudent settlement of the claim. The only thing remaining to determine is whether or not the railroad company acted in good faith in making the settlement." See also the following cases which sustan this rule: New York Cent. & H. R. R. Co. v. T. Stuart & Son Co. 260 Mass 242, 157 N.E. 540, 543 (5, 6) ; Chicago, R. I. & P. R. Co. v. Dobry Flour Mills, Inc., 10 Cir., 211 Fed. 2d 785, 787 (1, 2) ; The Chicago, Rock Island & Pacific Railway Company v. The United States of America, 7 Cir., 220 Fed. 2d 939; Thermopolis Northwest Electric Co. v. Ireland, 10 Cir., 119 Fed. 2d 409, 412 (5, 6). These authorities also adversely dispose of McBride's contention that, under the terms of the indemnity provision of the contract, Santa Fe had no right, without the consent of McBride, to make the settlement with England and therefore Santa Fe cannot recover.

■ Santa Fe claims that its motion for summary judgment should be sustained by this court and judgment rendered in its favor against McBride. McBride counters with the proposition that the action of the trial court in refusing Santa Fe's motion for summary judgment was interlocutory and therefore not appealable. McBride relies upon the cases of Wright v. Wright, 154 Texas 138, 274 S.W. 2d 670 and Rogers v. Royalty Pooling Company, 157 Texas 304, 302 S.W. 2d 938 as authority for his position. These cases do sustain that position, but in the later case of Tobin v. Garcia, 159 Texas 58, 316 S.W. 2d 396, decided May 7, 1958, and motion for rehearing overruled on October 1, 1958, this Court took another look at the Rogers case, supra, and after a thorough study overruled that case. The Rogers case cited the Wright case as authority. When we overruled the Rogers case, of necessity, we overruled that part of the Wright case relied upon as authority in the Rogers case. We held that where there was a final judgment rendered in a cause, which was appealable (and was appealed), the appellate court could act upon a denied motion for summary judgment if the point has been properly preserved.

■ We will therefore examine this record to determine whether or not Santa Fe's motion for summary judgment should be sustained. We hold it should be sustained. Santa Fe claims that under the wording of Paragraph 5 of its contract with McBride, it had an absolute right to compromise England's claim against it; that it would be entitled

to recover the amount paid in settlement even without proving a reasonable and prudent settlement in the absence of allegations and proof of bad faith, collusion or fraud. It cites as authority for such contention U. S. Fidelity & Guaranty Company v. Jones (5th Cir.), 87 F. 2d 346 and Central Surety & Insurance Corporation v. Martin, Texas Civ. App., 1949, 224 S.W. 2d 773, wr. ref. We have read the cases and the contract in each of them, by express language, gave the indemnitor the right to settle and compromise claims against it. Our contract does not give such right by express language. It binds the indemnitor "to promptly repay any sum or sums which railway *may* pay, or be compelled to pay, and discharge any judgment or judgments which may be rendered against it * * *." Had the parties intended to give Santa Fe the absolute and unconditional right to settle or compromise claims and bind the indemnitor to reimburse it for such sums paid out, it would have been a very easy matter to have inserted such language in the contract. We therefore overrule this contention of Santa Fe.

McBride's motion for summary judgment relies upon the claim that the indemnity provision did not cover injuries sustained by Santa Fe's employees; that it did not apply to this type of liability; that the agreement covers only the plant itself and not the use and operation of the track on which the injury occurred; that Santa Fe was a mere "volunteer" in making the settlement because no suit had been filed by England against Santa Fe, nor had any judgment been rendered against Santa Fe at the time of the settlement and that the settlement was made without his consent and he has not ratified the same. As to the first three of the above, the Court of Civil Appeals has held adversely to McBride, and he has not appealed from such holding.

Under Mitchell's Inc. v. Friedman, supra, Santa Fe had a right, in good faith, to make a reasonable settlement with England because it had notified McBride of the claim against it and had called upon him to take over the satisfaction of same. McBride refused to do this and denied any liability whatsoever on the claim. Having gone ahead and made settlement, Santa Fe then assumed the responsibility of showing that it made the settlement with England in good faith, and that it was a reasonable and prudent settlement. In order for Santa Fe to have its summary judgment herein, it must show that the last above stated two facts are established by this record before us as a matter of law. Are these last two facts established as a matter of law? We hold they are.

The evidence in this record shows that the loading ramp where England was injured had been a part of the plant for more than five years prior to England's injury. The piece of timber, partially buried on this ramp, had been there for some time and the Santa Fe employees were aware of its location for a long period of time. It had been necessary for many months to cross over this timber in order to reach the top of the ramp to signal the train operatives. The exact period of time is not clearly shown, but it is shown by the depositions to have been there long enough that the Santa Fe employees were well aware of its existence. Nothing had been done to remove this timber. The ramp was a large pile of rock, chat and dirt about 12 feet high with its bottom some 3 to 3½ feet from the switch track. The ramp was wide enough for a truck to drive up on it and to back upon a platform extending out from the ramp a sufficient distance and height so that the end of the platform would be above a railroad car and beyond the side of the car nearest the ramp a sufficient distance for the rock and chat from the loaded truck to be dumped into the car below. This ramp was used by McBride to load chat and rock into the railroad cars for shipment to the Santa Fe and other purchasers. It was a convenience to McBride. The spur track was used by the Santa Fe to store empty cars for McBride's use, and to remove such cars when one or more was filled by McBride and ready for moving to its place of delivery.

The switch track curved after it passed the ramp to such an extent that it was necessary for a trainman to get on top of the ramp to pass signals from the ground switchman to the other members of the train crew in order to properly "spot" or place the cars being handled by the particular train. At the time of his injury, England was engine foreman of this particular switching train of 18 cars and in charge of that train. The train was engaged in pushing the 18 empty gondola and coal cars onto this switch track to be used by McBride as needed for shipment of the material made by the rock crusher and as sold to his customers. The train crew reached the top of the dump by crawling, or walking or scrambling up the side of the dump. These sides were loosely piled with chat, rock and dirt. At the time of the injury, England needed to reach the top of the dump to give the necessary signals to the train crew so as to properly control the switching of the cars. There was a large bridge timber 6 x 8 or 10 x 12 inches on the side of the dump partly covered by the chat, stone and dirt, but with some six or eight feet uncovered and lying on the surface of the side. In order to reach the top of the dump it was necessary to cross over the

exposed part of the timber. In getting across this timber, England's right foot slipped in the loose chat, dirt or stone, and he partly fell down. In trying to keep from falling completely down and also to get across the exposed part of the timber, his body was in a strain and he "wrenched" or "strained" his back. It was only a few minutes until quitting time and he finished his shift and went home. His back continued to hurt but he came back to work on his next shift, but was unable to continue and he was relieved and sent home. This occurred about April 14, 1954. He was sent to the hospital and was treated. He was unable to do any work for about six months. Then in October, 1954 he again tried to work, but after about four or five days he had to be taken off the job and sent to the hospital. As a result of his injury, he suffered much pain. He had a laminectomy and and spinal fusion operation on November 4, 1954 and was unable to return to work until October 26, 1955. At the time of his injury he was being paid from $400 to $450 per month, and was a strong, able bodied man 35 years of age. He lost approximately 18 months wages from the date of his injury until his return to his job. On July 31, 1956 Santa Fe settled England's claim for the sum of $8,495.00, after notifying McBride as above set out.

We think the following quotation from the case of The Chicago, Rock Island & Pacific Railway Company v. The United States, 7 Cir. 220 Fed. 2d. 939 at p. 941 is particularly applicable to this cause. In speaking of the railway company's settlement of a Federal Employers' Liability Act case, the Court said:

"* * * Plaintiff at the time it made settlement with the employee did not have the benefit of such a finding. [Negating negligence of plaintiff, railway company]. It was required at that time to use its foresight rather than its hindsight in evaluating the situation relative to its probable liability. Taking into consideration that which we all know, that is, the almost insurmountable difficuties attending the defense by a railroad in an action for damages under the Federal Employers' Liability Act, it cannot be said that plaintiff made other than a fair and reasonable settlement of its potential liability. To have resisted settlement to the point of a jury verdict would have been sheer folly under the circumstances."

■ The Supreme Court of the United States, in construing this Act, has held that a railroad is liable to an injured employee if the railroad's negligence played a part in producing the employee's injury. Rogers v. Missouri Pacific Railroad Co. 352

U.S. 500, 524, 559; 1 L. Ed. 2d 493, 515; 77 Sup. Ct. 443, 459, 478; Deen v. Gulf, Colorado & Santa Fe Ry. Co., 353 U.S. 925, 1 L. Ed. 2d 721, 77 Sup. Ct. 715, reversing a Court of Civil Appeals judgment in favor of the railroad 275 S.W. 2d 529, wr. ref., n.r.e.; Gibson v. Thompson, Trustee, 2 L. Ed. 2d 1, 355 U.S. 18, 78 Sup. Ct. 2, reversing an opinion of this court absolving the railroad from liability and reported 156 Texas 593, 298 S.W. 2d 97; Arnold v. Panhandle & Santa Fe Railway Co., 353 U.S. 360, 1 L. Ed. 2d 889, 77 Sup. Ct. 840, reversing a Court of Civil Appeals opinion absolving the railroad from liability, 283 S.W. 2d 303. Many other United States Supreme Court cases are cited in the Gibson case, supra, Under the facts of this case and under the law controlling liability of a railroad to its employees who suffer injury in the operation and use of the facilities furnished by the railroad, we hold, as a matter of law, that Santa Fe was reasonably justified in making a settlement, and that the settlement was made in good faith.

Judgments of both courts below are reversed and judgment here rendered for Santa Fe against G. C. McBride, d/b/a G. C. McBride Co. and the Central Surety and Insurance Corporation for the sum of $8,495.00 with 6% interest from and after July 31, 1956, together with all costs of suit. Central Surety and Insurance Corporation is hereby given a judgment against G. C. McBride d/b/a G. C. McBride Company for such amounts as it may be forced to pay to satisfy the above judgment.

Opinion delivered October 22, 1958.

### ON MOTION FOR REHEARING

MR. JUSTICE GRIFFIN delivered the opinion of the Court.

Respondent, McBride, has filed a vigorous motion for rehearing in which he insists that we were in error in rendering summary judgment for the Santa Fe because of his pleadings of laches and estoppel as a defense to Santa Fe's cause of action. He further asserts that the defense of laches raised a fact issue and therefore it was error to render a summary judgment.

After the petition and answer had been filed and the cause was awaiting trial, McBride filed his unverified motion for summary judgment. This motion was based upon the ground that the indemnity provision of the contract did not cover the happening in question; therefore, as a matter of law, a proper

construction of the contract would not permit Santa Fe to recover. McBride alleged that Santa Fe did not notify him of England's injury until two years and 15 days had elapsed, which fact engendered an unsurmountable degree of prejudice to defendant in investigating the said accident, and, in fact, made it impossible for defendant to know the nature of the accident or the extent of the alleged injury suffered by plaintiff's employee, and sought to bar plaintiff's action by virtue of laches. McBride then pleads facts he alleged constituted an equitable estoppel against the Santa Fe. These allegations are the only ones in McBride's answer touching on either laches or estoppel.

After McBride's motion for summary judgment was filed, depositions of the injured party, England; of E. A. McBride, brother of G. C. McBride, and the general manager of the rock crushing plant at the time of England's injury, and previously thereto, and at the time the depositions were taken, were filed in this cause. Stipulations as to the facts of the case were filed by the parties. About 30 days after McBride had filed his motion for summary judgment, an unverified motion for summary judgment was filed by Santa Fe. In this motion it was alleged that the pleadings, depositions and stipulations on file showed there is no genuine issue as to any material fact, and asked for judgment as a matter of law. In this state of the record, the trial court had a hearing on the motions for summary judgment on June 12, 1957, and at the close of the hearing the trial judge granted McBride's motion for summary judgment and denied Santa Fe's motion.

In this case the stipulation sets forth that Santa Fe did notify McBride of England's claim for damages and it did call upon McBride to take charge of the claim and proceed with it; that McBride notified Santa Fe that he would not take over England's claim and denied any liability under the indemnity agreement contained in the contract. There was no denial of liability because of any delay on the part of Santa Fe in notifying McBride's of England's injury. Santa Fe settled with England after receiving McBride's denial of any liability. The stipulation further sets out the date of England's injury; the date of Santa Fe's letter notifying McBride of the injury and calling upon him to defend against England's claim.

■ The deposition of E. A. McBride shows that he first learned of England's injury and Santa Fe's demand on G. C. McBride shortly after the demand was made. Nowhere in the deposition

was there anything said about any inconvenience, prejudice or injury suffered by McBride on account of not being notified earlier. Neither was there anything contained in England's deposition that showed anything regarding the dealings between McBride and Santa Fe. Laches has been defined as follows:

"In Ross' Estate v. Abrams, Texas Civ. App., 239 S.W. 705, 709, Chief Justice Fly quoted with approval from Pomeroy on Equity, Vol. 5, Sec. 1442, as follows: 'Laches, in legal significance, is not mere delay but delay that works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within the limits allowed by law; but when knowing his rights, he takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right.' " Culver v. Pickens, 142 Texas 87, 176 S.W. 2d 167.

Laches is an affirmative defense which must be pleaded by the party relying on it. It is not incumbent upon a plaintiff to incorporate in his petition allegations which negative the defense of laches. See Culver v. Pickens, 142 Texas 87, 176 S.W. 2d 167. At the hearing on the motions for summary judgment the burden was upon Santa Fe to show there was no genuine issue of fact as to the cause of action asserted by it. Gulbenkian v. Penn, 151 Texas 412, 252 S.W. 2d 929; Tigner v. First Nat. Bank of Angleton, 153 Texas 69, 264 S.W. 2d 85. The evidence heard on Santa Fe's motion for summary judgment showed its legal right to same, therefore, the motion could only be denied by the court if McBride raised his affirmative defenses of laches and estoppel by some means other than mere pleadings. The record shows no inconvenience, prejudice or injury suffered by McBride by failure of Santa Fe to sooner notify him of England's injury. This being true no fact issue as to laches or estoppel was shown.

Mere lapse of time raises no presumption of laches. It must be an unreasonable delay which has worked injury to another person. Turner v. Hunt, 131 Texas 492, 116 S.W. 2d 688, 117 A.L.R. 1066; Ross' Estate v. Abrams, Texas Civ. App., 239 S.W. 705, affirmed Abrams v. Ross' Estate, Com. App., 250 S.W. 1019; 30 C.J.S. 522, 531, Sec. 116; Culver v. Pickens, supra, 176 S.W. 2d 170 (3).

■ When a motion for summary judgment is supported by affidavits, depositions, stipulations or other extrinsic evidence sufficient on its face to establish facts, which, if proven at the trial, would entitle the movant to an instructed verdict, the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must justify his inability to do so and seek appropriate relief under subdivision (f) of Rule 166A. Stafford v. Wilkinson, 157 Texas 483, 304 S.W. 2d 364 (4-5), 1957; Schepps v. American District Telegraph Co. of Texas, Texas Civ. App., 1956, 286 S.W. 2d 684, 690 (7-9), no writ history; Palm v. La Mantia Bros. Arrigo Company, Texas Civ. App., 1956, 287 S.W. 2d 208 (3), n.r.e.; McDonald, *Summary Judgments,* 30 Texas Law Rev. 297(c) ; McDonald, Texas Civil Practice, Vol. 4, Cumulative Supplement, pp. 26-39, Secs. 17.26.0 to 17.26.3.

Where the plaintiff moves for summary judgment in an action in which the defendant has pleaded an affirmative defense, he is entitled to have his summary judgment if he demonstrates by evidence that there is no material factual issue upon the elements of his claim, unless his opponent comes forward with a showing that there is such a disputed fact issue upon the affirmative defense. LeMond & Kreager, *The Scope of Pleading as Proof in Summary Judgment Procedure,* 30 Texas Law Rev., pp. 613-622.

There seems to be some confusion among our courts as to just what is the correct rule of law to be applied in the above situation. As an example, we find the following statement of the rule in City of San Antonio v. Castillo, Texas Civ. App., 1956, 293 S.W. 2d 691 (7) :

"If there is a disputed issue of fact here as to whether or not the appellees were guilty of laches resulting in injury to the City, the summary judgments should be set aside, *and the burden was on appellees to show that there was no such genuine issue.* * * *" (Emphasis added).

We do not approve the underlined quotation as a correct statement of the law. It is contrary to our holding herein.

In the present case Santa Fe's evidence in the hearing on the motion showed no fact issue as to laches or estoppel. McBride did not come forward with any evidence to show any extraordinary circumstances, prejudice or change in position, damaging him

in the conduct of his defense. The record shows that he refused to defend England's claim on the ground that the contract imposed no liability upon him.

We find nothing in the record to cause us to change the judgment heretofore entered. The motion for rehearing is overruled.

Opinion delivered March 25, 1959.

MR. JUSTICE SMITH dissenting.

This cause being before us on motion for rehearing, I withdraw my former dissent and file the following as a substitute therefor.

I disagree with the majority in assuming jurisdiction of this case. Jurisdiction has been erroneously predicated upon the Texas Rules of Civil Procedure. Such action is prohibited by Article 5, Sec. 3 of the Texas Constitution. Section 3 reads:

"The Supreme Court shall have appellate jurisdiction only except as herein specified, which shall be co-extensive with the limits of this state. Its appellate jurisdiction shall extend to questions of law arising in cases of which the Courts of Civil Appeals have appellate jurisdiction, under such restrictions and regulations as the Legislature may prescribe."

Section 2 of Article 1731a, Vernon's Annotated Civil Statutes of Texas, expressly provides that the rules adopted by the Supreme Court of Texas shall not abridge, enlarge, or modify the substantive rights of any litigant. This Court in adopting the rules of procedure particularly provided in Rule 816 that "these rules shall not be construed to extend or limit the jurisdiction of the Courts of the State of Texas."

The Court of Civil Appeals had jurisdiction of petitioner's appeal to that court complaining of the granting of the motion for summary judgment against it by the trial court. Petitioner's appeal claimed error in that the evidence raised a fact issue. The judgment of the Court of Civil Appeals, reversing the action of the trial court in granting McBride's motion for summary judgment, was final.

Article 1821, Vernon's Annotated Civil Statutes, provides:

"The judgments of the Courts of Civil Appeals shall be conclusive on the law and facts, nor shall a writ of error be allowed thereto from Supreme Court in the following cases to wit:

"5. In all appeals from interlocutory orders appointing receivers of trustees, or such other interlocutory appeals as may be allowed by law.

"6. In all other cases as to law and facts, except where appellate jurisdiction is given to the Supreme Court, and not made final in said Courts of Civil Appeals. Acts 1st C.S. 1892, p. 25; Acts 1923, p. 110; Acts 1929, 41st Leg., p. 68, ch. 33, Sec. 1."

Petitioner relies upon Subdivision 6 of Article 1728, Vernon's Annotated Civil Statutes, in petitioning this Court to entertain jurisdiction. This Court has jurisdiction only in such cases wherein the Court of Civil Appeals has committed an error of substantive law. The majority opinion fails to point out the error of substantive law committed by the Court of Civil Appeals, perhaps for the obvious reason that no error of substantive law was committed by the intermediate court. That court had appellate jurisdiction of this case by virtue of that part of the severable judgment entered by the trial court granting respondents' motion for summary judgment. The Court of Civil Appeals agreed with petitioner's argument in connection with this part of the judgment and thereby sustained its first point of error. The only other point of error presented to the Court, therefore, was as follows:

"Appellant was entitled to judgment against appellee as a matter of law, and the trial court erred in overruling appellant's motion for summary judgment."

This point of error, standing alone, would not have entitled petitioner to an appellate review. It is very important to note, however, that the Court of Civil Appeals did not base its holding on this point on the proposition that it was interlocutory and therefore not subject to appellate review. The Court rather, considered the point and, in doing so, failed to agree with petitioner and, moreover, *specifically held* that a genuine issue of fact did exist in the case. I submit, therefore, that under the clear and unambiguous wording of the predicating sentence of Article 1821 and Subdivisions 5 and 6 thereunder, the judgment of the Court of Civil Appeals was final. Where, then, is there any error of substantive law? The Court of Civil Appeals mere-

ly found on the facts that petitioner was not entitled to the relief which it sought on that part of the severable judgment which was interlocutory. I submit again, therefore, that its judgment upon this point was final.

This Court has recently held in the case of the State of Texas v. Wynn, 157 Texas 200, 301 S.W. 2d 76 (April 10, 1957), that Subdivision 5 of Article 1821 was absolutely conclusive as to Subdivision 6 of Article 1728. See page 78 of the *Court's Per Curiam* opinion in the Wynn case, where the following statement is found:

"For Supreme Court jurisdiction to attach, in the absence of statutory provision, it is not only necessary that a cause of action come within the authorizing clauses of Article 1728 but also that it be not precluded by the prohibitions of Article 1821."

Assuming that the majority is correct in holding that under Mitchell's Inc. v. Friedman, 157 Texas 424, 303 S.W. 2d 775 (1957), settlement made by petitioner to England was "reasonable" as a matter of law, the majority is required to consider the defensive issue pleaded by respondent McBride in connection with the question of whether or not petitioner retained any indemnity coverage as against McBride under the lease-indemnity contract. In denial of coverage, McBride pleaded "laches" and estoppel and the facts demonstrating the applicability of such defenses in detail.

This defensive issue of laches has never been submitted to a court or jury for determination. The defense was pleaded as follows:

## "VIII.

"For further answer herein, defendant alleges that the accident upon which plaintiff's claim of indemnity is based occurred at approximately 6:45 A.M. on the 10th day of April, 1954; that plaintiff knew, or in the exercise of ordinary diligence, should have known of such accident at that time on that day; that the contract of indemnity between the parties necessarily contemplated that the railway company should give reasonable notice to defendant in order that he could make investigation of any and all circumstances upon which he could have been legally bound for indemnity, thereby adequately protecting his rights; that Plaintiff, nevertheless, failed and neglected to

notify defendant from whom he now seeks to recover indemnity, of such accident until the 25th day of April, 1956, that being two years and fifteen days subsequent to said accident, thereby engendering an unsurmountable degree of prejudice to defendant in investigating the said accident and, in fact, making it impossible for defendant to know the nature of the accident or the extent of the alleged injury suffered by plaintiff's employee; that by virtue of such gross and inexcusable delay, plaintiff is precluded by his laches and forever barred from asserting against defendant any claim whatsoever growing out of such facts and circumstances.

## "IX.

"Defendant would further show that Plaintiff was in a position to foresee that failure on its part to give notice of the alleged accident to defendant would create a prejudicial situation against defendant and plaintiff railway company was in a position to prevent such from arising while this defendant, by his lack of knowledge of the circumstances, was not in a position to secure any character of protection; that plaintiff, by his acquiescence and neglectful conduct necessarily induced this defendant into a course of inaction, thereby preventing defendant from protecting his interests and placing him in a materially disadvantageous position; that the plaintiff knew or ought to have known that this prejudicial situation would result from his neglectful conduct; that plaintiff and plaintiff only had the knowledge which, if communicated to this defendant, would have in all probability, defeated or materially diminished any claim growing out of the aforementioned circumstances; that such gross neglect to give notice does, therefore, equitably estop this plaintiff from asserting any demands whatsoever against this defendant."

At the hearing of the motions for summary judgment, it was stipulated that "* * * the contract and bond were duly executed and were in full force and effect on the *date of the accident alleged herein, April 10, 1954. That on April 25, 1956,* plaintiff, Gulf, Colorado and Santa Fe Railway Company, sent to defendant, G. C. McBride, the letter attached hereto and marked Exhibit "B." This stipulation together with the pleadings above clearly raises an issue of fact as to whether McBride had notice of the injuries sustained by England prior to April 25, 1956. The judgment sustaining McBride's motion for summary judgment makes no reference to the "laches" defense. If it is true that respondent-indemnitor McBride was not notified

by petitioner of England's injury for some two years and fifteen days, then upon a finding to that effect, McBride should prevail. A summary judgment is never proper if the evidence raises issues of fact to be determined by the court or jury. Gulbenkian v. Penn, 151 Texas 412, 252 S.W. 2d 929, 931, 932.

In addition to the pleadings and stipulations, I respectfully call attention to evidence given in the oral deposition of both C. F. England, Jr., the injured party, and E. A. McBride, the manager of G. C. McBride Company, which, in my opinion, has a direct bearing on the defense of laches.

Mr. England testified that he was an employee of the petitioner and that a part of his duties for the railroad was to spot cars; that in the performance of such duties he sustained a back injury on April 10, 1954. His testimony reveals that he sustained the injuries when he was in the act of passing signals to the engineer; that he either stumbled over or struck a piece of timber. He described the timber as being a bridge timber, larger than a railroad tie, which was on the ground and partially covered with dirt; that he didn't know the exact length of the timber but that he thought some seven or eight feet were not covered with dirt.

E. A. McBride testified by oral deposition that he had no knowledge of such claim and especially the facts relative to the piece of timber being involved until long after the accident. From the testimony, the inference may be fairly drawn that he did not obtain such knowledge until the letter of April 25, 1956, referred to in the stipulation. There is no evidence that anyone connected with the McBride Company had knowledge of the accident or any of the details thereof.

The stipulation that notice was given by letter on April 25, 1956, more than two years after the date of injury, does not mean that as a matter of law the respondent was guilty of laches and thereby estopped to claim under the indemnity contract. Neither does the stipulation prove that the respondent did not give notice or that McBride did not have notice well within the two-year period. It seems to me to be a reasonable deduction from the pleadings, the stipulations, and the depositions that McBride expects to prove that the letter was the first notice received as to England's injury. It is equally possible that the petitioner could offer evidence that notice was given long before April 25, 1956. In view of the state of the record on this question,

I contend that this Court is without authority, by its judgment, to preclude a trial of this issue in the trial court.

The majority approach to a solution of the question involved is exactly backward. We are not considering McBride's motion for summary judgment. It is the motion for summary judgment of the petitioner with which we are concerned. That motion can hardly be called a motion for summary judgment. It amounts to no more than an unsworn conclusion of the pleader. No affidavits accompany the record. Petitioner merely avers that the pleadings, depositions, and stipulations show that it was entitled to judgment as a matter of law. The principles of law announced in this and other cases have been stressed by this Court and the Court of Civil Appeals in the following cases: Smith et al. v. Bolin, 271 S.W. 2d 93; Ward v. Stroud, Texas Civil Appeals in the following cases: Smith et al. v. Bolin, 271 S.W. 2d 93; Ward v. Stroud, Texas Civ. App. (1955), 274 S.W. 2d 136, wr. ref. n.r.e.; Kenny v. Starnes, Texas Civ. App. (1955), 277 S.W. 2d 919; Roberson v. Allstate Ins. Co., Texas Civ. App. (1955), 278 S.W. 2d 179, wr. ref. n.r.e.; Feldman v .Drumheller, Texas Civ. App. (1956), 284 S.W. 2d 237, wr. ref. n.r.e.; Gunnels v. Atcheson, Texas Civ. App. (1956), 288 S.W. 2d 878; Trammell v. Trammell, Texas Civ. App. (1956), 290 S.W. 2d 324, wr. ref. n.r.e.

Petitioner is seeking the summary judgment and not McBride. In passing upon this motion all doubts as the existence of a genuine issue of material fact must be resolved against the moving party, and the opposite party is entitled to the benefit of every reasonable inference which can be properly drawn in his favor. Womack v. Allstate Ins. Co., Texas Civ. App., 296 S.W. 2d 233; Gulbenkian v. Penn, supra. The burden of proving that there is no genuine issue of material fact is on the movant (petitioner). It is the duty of the court hearing the motion for summary judgment to determine if there are any issues of fact to be tried, and not to weigh the evidence or determine its credibility, and thus try the case on the affidavits. In Gulbenkian v. Penn, supra, this Court quoted with approval from the case of Kaufman v. Blackman, Texas Civ. App., 239 S.W. 422, 428, wr. ref. n.r.e., the following holding:

"The underlying purpose of Rule 166-A was elimination of patently unmeritorious claims or untenable defenses; not being intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. * * * "

When both parties, as in this case, move for a summary judgment, the burden is upon each to prove clearly his right thereto, and neither party can prevail because of the failure of the other to discharge his burden. Tigner v. First National Bank of Angleton, 153 Texas 69, 264 S.W. 2d 85; Steinberg v. Adams, D.C. 90 Fed. Supp. 604; Walling v. Richmond Soren Anchor Co., 2 Cir. 154 Fed. 2d 780; Federal Practice and Procedure, Barron and Holtzoff, Sections 1235 and 1239; Morris' Federal Practice, Vol. 6, Sec. 65.13. The petitioners have not discharged the burden which rested upon them. The majority opinion states a rule that has no application here. The petitioner's motion for summary judgment is not supported by affidavits, etc. Therefore, it has failed to establish a clear right to the summary judgment. Of course, the burden of proof will be upon the respondents to establish the defense of laches by a preponderance of the evidence in a trial upon the merits. The majority apparently recognizes that "laches" is a defense in this case, but grants the summary judgment on the sole proposition that McBride has failed to come forward with a showing that a disputed fact issue existed, or that he has suffered injury because of the failure of the petitioner to give notice until two years and fifteen days after the accident. The question of burden of proof on the issue of laches is not before us. This Court has no jurisdiction to determine issues that cannot arise until after a trial of the case upon its merits.

The majority states that there seems to be some confusion among the courts as to just what is the correct rule of law, and then proceeds to disapprove a holding of the Court of Civil Appeals of San Antonio in the case of City of San Antonio v. Castillo, Texas Civ. App. 1956, 293 S.W. 2d 691, 693. The Court of Civil Appeals in that case stated: "* * * The only basic question presented by this appeal is whether appellants were entitled to have the fact issue of laches submitted to a finder of facts." Why did we refuse the application for writ of error, n.r.e. if we did not approve the only basic question decided by the Court of Civil Appeals? I think the defense of laches is available to respondents here just as it was in the City of San Antonio case, supra. The petitioners have failed to pierce the pleading of such defense and established by affidavits or otherwise that there is no genuine issue of fact as to laches to be determined by the trier of the facts.

We should not hold that the trial court would be warranted in a trial on the merits to instruct a verdict on the theory that the defense of laches was untenable. The petitioner has wholly

failed to show that McBride was not harmed by its failure to give notice of England's claim for two years and fifteen days. The lapse of time between the accident and notice renders it entirely reasonable to conclude that McBride was deprived of the valuable right to make a prompt, full, and complete investigation. An investigation within a reasonable time might have produced witnesses to establish that the alleged piece of timber was not in a location to have been in the path of Mr. England. The petitioner makes the statement in its application for writ of error that, "* * * In view of the manner in which the accident occurred, the seriousness of the injury, and the present law, the settlement made by petitioner with Mr. England was not only reasonable and prudent but that the respondent should be thanking the petitioner for making such a good settlemen of the case."

It is my contention that this argument is beside the point. It disregards the fact that the legal rights of McBride were involved when it made the settlement, and completely ignores the right of McBride to have *the manner in which the accident occurred* tried and determined by a finder of facts. (Emphasis added.) The difficulty of defendant litigants to win verdicts at the hands of a jury and to win favorable decisions in the United States Supreme Court in F.E.L.A. cases is no justification for depriving McBride of a trial of the defenses of laches. It is only in cases where it indisputably appears that under no state of the case could laches be established that the question becomes one of law. As was said in the case of Collins v. Griffith, Texas Civ. App., 105 S.W. 2d 895, 898, no writ history:

"Laches and the statute of limitation are defenses to be urged by appellants on the trial of the case on its merits, and if established, would defeat a recovery * * *.

"The presumption of laches * * * arising from lapse of time may be rebutted and overcome by competent testimony, and under the allegations in appellee's petition and her proof, the delay is explained. These are issues to be determined on a trial of the merits if appellants plead limitation or laches as a defense."

" 'Limitations' and 'laches' are not synonymous; but 'limitations' signifies the fixed statutory period within which an action may be brought for some act done to preserve a right, while 'laches' signifies delay independent of statute.

" 'Limitations' signify that fixed statutory period, whether

expressly applicable to suits in chancery or followed by analogy, while 'laches' signifies unreasonable delay independent of statute or any fixed period of time. 'Laches' also involves prejudice, actual or implied, resulting from the delay. It does not arise from delay alone, but from delay which works disadvantage to another, as the defense of laches is neither a limitation nor an estoppel, but partakes of the characteristics of both." 25 Words and Phrases, 301. In re Van Tassell's Will, 196 N.Y.S. 491, 494, 119 Misc. 478; Wilder's Ex'r. v. Wilder, 82 Vt. 123, 72 Atl. 203, 205.

I submit that notwithstanding the fact that petitioner's settlement with England may have been reasonable as a matter of law under the circumstances of the case and all defensive issues relative to the injury thus abrogated, *then still it is an entirely different question as to whether or not petitioner retained indemnity coverage under the lease executed by the parties.* The effect of the majority opinion is that an indemnitee who fails and neglects to give his indemnitor notice of an accident and injury and consequent potential liability until some two years and fifteen days after its occurrence *is not, as a matter of law, guilty of laches; that the delay, as a matter of law, is excusable; and that the indemnitor, as a matter of law, could have suffered no prejudice.* If this is the true effect of the Court's holding on this question, the defense of laches, in my opinion, has been abolished in this state.

I again most respectfully urge this Court's consideration of the argument that the question of laches has no connection whatsoever with the defenses urged in connection with England's injury — that is, the defensive issues of sole proximate cause, comparative negligence, unavoidable accident and assumed risk. The question of laches relates to an entirely different question—*the question of coverage under the lease-indemnity contract itself.* The holding of the Court in this case could not, therefore, have the effect of abrogating such defense on the ground that petitioner's settlement *with England* was reasonable as a matter of law.

The application for writ of error should have been dismissed for want of jurisdiction, or, in the alternative, the judgment of the Court of Civil Appeals should be affirmed, or, in the further alternative, the cause should be remanded to the trial court for the purpose of disposing of the fact issues presented by the record.

464

Opinion delivered March 25, 1959.

Second motion for rehearing overruled April 22, 1959.