COX, COLTON, STONER, STARR AND
CO., P.C., et al., Appellants,

v.

DELOITTE, HASKINS & SELLS,
Appellee.

No. 08–82–00293–CV.

Court of Appeals of Texas,
El Paso.

May 9, 1984.

W. Royal Furgeson, Timothy Patton,
Kemp, Smith, Duncan & Hammond, El
Paso, for appellants.

Don Studdard, Temple B. Ingram, Jr., Studdard, Melby, Schwartz, Crowson & Parrish, El Paso, for appellee.

Before WARD, OSBORN and SCHULTE, JJ.

## OPINION

WARD, Justice.

This is an appeal by the Plaintiffs Cox, Colton, Stoner, Starr and Co., P.C., et al. from a take nothing summary judgment rendered in their suit to recover on an indemnity agreement executed by the Defendant Deloitte, Haskins & Sells. Also appealed by the Plaintiffs is a summary judgment rendered in favor of Deloitte, Haskins & Sells for $240,000.00 on their cross-action to recover the accelerated balance due under a dissolution agreement made between the parties. The issue on this appeal is whether Deloitte, Haskins & Sells, as the indemnitor, had any duty to reimburse the indemnitees, the Plaintiffs, under the indemnity agreement where the indemnitee Plaintiffs settled and paid a third party claim for accounting malpractice over the objection of the indemnitor Defendant who stood ready to defend the third party action. We hold that under the summary judgment proof a fact issue was presented as to the duty to reimburse. We reverse the take nothing judgment of the trial court on the Plaintiffs' claim and remand for trial. We affirm the award on the cross-action.

For clarification purposes, the Plaintiff Cox, Colton, Stoner, Starr and Co., P.C. will be referred to as CCSS and the individual Plaintiffs by their names. The Defendant Deloitte, Haskins & Sells will be referred to hereafter as Deloitte.

The controlling summary judgment facts are not disputed. From May 30, 1976, until October 19, 1978, the Defendant Deloitte, a firm of certified public accountants, maintained an office in El Paso. During that period of time the Plaintiffs Cox, Colton, Stoner and Starr were partners in that firm. On October 19, 1978, an agreement was entered into between the Defendant

and the Plaintiff CCSS and the four individual Plaintiffs severing the relationship of the individuals Cox, Colton, Stoner and Starr from the Defendant. The critical portion of the agreement is Paragraph 9. It details the obligation of indemnity as follows:

DH & S (Deloitte) hereby agrees to indemnify and hold harmless CCSS and Messrs. Cox, Colton, Starr & Stoner from and against any and all liabilities, loss, damages, costs and expenses, (including but not limited to reasonable attorneys fees and court costs) resulting, directly or indirectly, from (i) any services performed by, or any alleged malpractice of, the El Paso office of DH & S (Deloitte) from and after May 30, 1976 to and including the Closing Date, ... or (v) any other liabilities or obligations of, or claims against, any of the parties to this Agreement which result from operation of such El Paso office on or prior to the Closing Date. DH & S (Deloitte) shall defend CCSS and Messrs. Cox, Colton, Starr and Stoner against any claim made at any time after the Closing which is covered by the foregoing indemnity, or promptly pay or reimburse the indemnitees, on demand, for any payment the indemnitees may be required to make at any time after the Closing which is covered by this indemnity.

The agreement further obligated CCSS to make annual payments of $80,000.00 on May 15 for five years beginning in 1979 and ending in 1983, such payments representing the deferred balance of the purchase price for tangible and intangible assets of the El Paso office of Deloitte. By letter dated January 8, 1981, CCSS made demand on Deloitte under the indemnity provision of the agreement for Deloitte to provide a defense against a claim asserted by four individual shareholders of Downtown Leasing Company of El Paso. The shareholders' claim involved an allegation that Mr. Thomas Elliott, an employee or a partner of the El Paso office of Deloitte, provided the shareholders, through Mr. Lowenfield, with erroneous advice regard-

ing the tax consequences of a sale of their common stock in Downtown Leasing Company to Casa Ford. Tax returns of the shareholders were prepared in accordance with the alleged advice, but after an audit by the IRS, the four shareholders' income from the sale of the stock was reclassified from capital gain to ordinary gain and they were then assessed tax deficiencies, interest and penalties.

After receiving the demands made on behalf of the shareholders, Deloitte through its attorney agreed that it would defend against the claim or suit. At the same time it made it clear that it was not agreeing to or authorizing settlement of the claim by CCSS prior to a judicial determination of liability.

By letter dated April 2, 1981, to the Defendant and to the Plaintiff CCSS, an attorney for the four shareholders demanded a total of $32,007.61 plus an amount to be placed in escrow to cover any income tax which might be assessed upon the amount demanded. The letter additionally stated it was being submitted as an offer of settlement under the Texas Deceptive Trade Practices Act and if it became necessary, the four shareholders would file suit for the full amount of their damages, trebled to the extent permitted by applicable law, and for court costs and attorney's fees. The letter went on to state in detail that Mr. Lowenfield, the Board of Directors of Casa Ford, Inc., including the four shareholders, and all their affiliates intended to terminate their professional relationship with the Plaintiff CCSS if the claim was not resolved to their immediate satisfaction.

On May 4, 1981, the four shareholders again notified Deloitte and CCSS of their dissatisfaction concerning the manner in which their claim was being handled. This correspondence again stated that legal proceedings would be instituted under the Texas Deceptive Trade Practices Act on May 8, 1981, if their claim was not resolved prior to that time.

By letter dated May 7, 1981, Deloitte again confirmed to CCSS that Deloitte "would handle the matter and defend against the claim or suit." Deloitte agreed to provide the defense since any services relating to the alleged malpractice were performed by Deloitte and because the negligence, if any, occurred prior to the formation of the CCSS accounting firm and therefore CCSS was not a proper party to the claim. The letter further declared that Mr. Cox did not have any authority to settle the claim and that should Mr. Cox make any payment in respect to the claim otherwise than pursuant to judgment in a judicial proceeding, that Deloitte would not reimburse him for it. Thereafter CCSS paid off the claim of the four shareholders and on May 20, 1981, filed the present suit against Deloitte alleging a breach of Paragraph 9 of the agreement. It also sought a declaratory judgment regarding whether the failure of Deloitte to comply with the indemnity provisions and to reimburse CCSS for the payment of the shareholders' claim excused CCSS from its obligation to make the annual payment of $80,000.00 due on May 15, 1981.

After answering suit, Deloitte notified CCSS of its intention to accelerate the unpaid balance of the purchase price which then totaled $240,000.00 if CCSS failed to pay the installment due May 15, 1981, by June 22. Payment failing, Deloitte filed its first amended answer and counterclaim denying a breach of its contractual duty to indemnify CCSS and praying that it recover the accelerated balance of $240,000.00.

Deloitte then moved for summary judgment on the contractual indemnification claim of CCSS on the ground that the cause of action was barred as a matter of law under the dissolution agreement because CCSS had settled the third party's alleged malpractice claim without an adjudication of liability or even the filing of suit. Summary judgment was also sought by Deloitte on its counterclaim on the basis that the failure of CCSS to tender the annual payment due under the agreement authorized Deloitte to accelerate the remaining balance.

■ In response to the motion for summary judgment, CCSS urged that Deloitte was not entitled to judgment as a matter of law and that numerous genuine issues of material fact were raised by the summary judgment evidence including: (1) whether under the terms of the indemnity agreement the duty of Deloitte to indemnify CCSS was absolutely conditioned on a prior liability adjudication; (2) whether the actions of Deloitte constituted a breach of its contractual duties under the indemnity provisions; (3) whether Deloitte had waived its right, if any, to insist on a prior liability adjudication; (4) whether the contractual indemnity provision was ambiguous; and (5) whether the alleged breach of contract by Deloitte in failing to indemnify CCSS excused CCSS from its obligation to tender the annual payment.

Upon hearing the motion, the trial court granted the Defendant's motion for summary judgment and rendered judgment that CCSS take nothing on its claim and that Deloitte recover $240,000.00 plus interest on its counterclaim, an attorney's fees claim of Deloitte on its counterclaim being severed before the entry of final judgment.

The Plaintiffs' first two points allege that the trial court erred in granting summary judgment as the record did not establish that the claim of CCSS was barred as a matter of law since the voluntary payment did not deprive Deloitte of its right to a judicial determination of the claim, nor did the contract of indemnity provide as a matter of law that a prior liability adjudication was necessary.

Deloitte contends that basic indemnity law is to the effect that in the absence of a provision expressly granting an indemnitee the right to settle, a prior judicial determination was a condition to any duty on the part of the indemnitor to reimburse an indemnitee for its voluntary payment of the third party claim. The authority relied on is 14 Tex.Jur.3d Contribution and Indemnification, sec. 25 at 681 and the statement is to the following effect:

By express language in the contract, an indemnitee may be given an uncondi-

tional and absolute right, limited only by fraud and bad faith, to settle or compromise a claim before the indemnitee's liability to the injured party has been judicially determined, and immediately to bind the indemnitor to reimburse him for sums thus paid out. In the absence of this stipulation, an indemnitor is entitled to insist on a judicial determination of the liability of the indemnitee to the injured party.

*Gulf, Colorado & Santa Fe Railway Company v. McBride,* 159 Tex. 442, 322 S.W.2d 492, 496 (1958) is the authority relied upon. However, in that case, the Supreme Court was concerned with the quantum of proof that an indemnitee had to offer after it in good faith made a reasonable settlement with a third party claimant where the indemnitor had been notified of the third party claim, had been called upon to take over the satisfaction of the same, had then refused and had denied any liability whatsoever on the claim. In that case, the indemnitee Santa Fe claimed that it would be entitled to recover the amount paid in settlement even without having to prove a reasonable and prudent settlement in the absence of allegations and proof of bad faith, collusion or fraud. The Supreme Court disagreed and pointed out that in the absence of a provision of the contract giving Santa Fe as the indemnitee the absolute and unconditional right to settle the third party claims, that Santa Fe could recover only after a showing that it made the settlement with the third party in good faith and that it was a reasonable and prudent settlement.

The Texas rule in those cases where the indemnitee makes a settlement of a claim with a third party, where the settlement was made with the consent of the indemnitor or where the indemnitor refuses to defend, is further stated in *Fireman's Fund Insurance Company v. Commercial Standard Insurance Company,* 490 S.W.2d 818, 824 (Tex.1972) as follows:

Some jurisdictions require that the indemnitee prove actual rather than potential liability to the plaintiff with whom he

has settled before he can recover the amount of the settlement from the indemnitor. This rule obviously is a discouragement to settlements of cases when there is a future indemnity suit yet to be tried. Texas does not follow this rule. Our courts have held that it is sufficient for the settling indemnitee to show a potential liability and that his settlement was reasonable, prudent and in good faith under the circumstances. See also: *Pan American Gas Company v. Natural Gas Construction Corporation*, 418 S.W.2d 380 (Tex.Civ.App.—Waco 1967, writ ref'd n.r.e.).

■ In contrast to the factual situations discussed in the above cited cases, the indemnitor Deloitte stood ready to defend this action, and yet in the face of this willingness, the indemnitee CCSS settled the third party action. Yet, the cited cases are not authority that Deloitte was discharged of all liability when its indemnitee proceeded with its settlement. Under such circumstances we have been cited to no case in Texas which has directly passed on the liability of the indemnitor. We are, however, persuaded by the position adopted by the Restatement, which to us is fair to the parties and preserves to the indemnitor its right to a judicial determination of its liability. In this situation, according to the Restatement, one entitled to indemnity is entitled to reimbursement limited to the amount of his net outlay properly expended and "if the indemnitee became a party to the transaction without the consent or fault of the indemnitor, to the amount by which the indemnitor has thereby benefited." 41 Am.Jur.2d Indemnity, sec. 35 at 725; Restatement, Restitution sec. 80.

■ What this means is that CCSS or Cox, Colton, Stoner and Starr must prove on final trial their own malpractice or the malpractice of their employee and their subsequent liability by the doctrine of respondeat superior which damaged the third party claimants. Whether that can be done is not before us at this time, as the summary judgment proof did not reach this point.

As to Deloitte, it retains its right to a judicial determination of liability and that right is protected. It can assert in that action any valid defenses it might have had against the third party claimants. The applicable rule then is that when an indemnitee pays a third party's money claim against an indemnitor, to which claim the indemnitor has a good defense, the indemnitee is not entitled to recover against the indemnitor. *Producing Properties, Inc. v. Sohio Petroleum Company*, 428 S.W.2d 365 (Tex.Civ.App.—Dallas 1968, no writ). The first two points of error are sustained.

Points of Error Nos. Three and Four have been duly considered and they are overruled.

■ Under the fifth point, Plaintiffs argue that the terms "claim" and "required to make" are not defined in the agreement and that the word "required" is inherently ambiguous. Those words as used in the context of the agreement were not ambiguous. See: *Gulf, Colorado and Santa Fe Railway Company v. McBride*, supra. The fifth point is overruled.

■ By their sixth point of error, the Plaintiffs allege that the trial court erred in granting the motion for summary judgment on the counterclaim of Deloitte because Deloitte breached its contractual obligations to provide a defense and to furnish reimbursement and thereby suspended the performance obligation of CCSS to make their annual payments as provided in the agreement. The point will be overruled. The Plaintiffs at all times have treated all of the terms of their contract of October 19, 1978, as being in full force and effect and have sued to recover under the terms of the indemnity which was one part of that agreement. Another part of that agreement was their obligation to pay their annual payments to Deloitte. In this regard, the rule is set out in *Board of Regents of University of Texas v. S. & G. Construction Company*, 529 S.W.2d 90 (Tex.Civ.App.—Austin 1975, writ ref'd n.r. e.). Treating a contract as continuing deprives a party of any excuse from ceasing

performance on other obligations in the contract, and the following language is found in the case at page 97:

> It is a fundamental proposition of contract law that when one party breaches its contract, the other party is put to an election of continuing or ceasing performance, any action indicating an intention to continue will operate as a conclusive choice, not depriving the injured party of his cause of action for the breach which has already taken place, depriving him only of any excuse for ceasing performance on his own part.

See also: *Hanks v. GAB Business Services, Inc.*, 644 S.W.2d 707 (Tex.1982); *Houston Belt & Terminal Railway Company v. J. Weingarten, Inc.*, 421 S.W.2d 431 (Tex.Civ.App.—Houston 1967, writ ref'd n.r.e.). This point is overruled.

We reverse the take nothing judgment granted by the trial court on the Plaintiffs' claim and remand the Plaintiffs' cause for trial. We sever the Plaintiffs' cause from the cross-action filed by Deloitte. We affirm the award on the cross-action filed by Deloitte.