ADA OIL COMPANY et al., Appellants,

v.

Richard A. DILLABERRY, Appellee.

No. 204.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 9, 1969.

Rehearing Denied May 7, 1969.

Ellis A. Oualline, Jr., Conroe, Ernest C. Hurst, John H. Caldwell, Caldwell & Hurst, Houston, for appellants.

Wellborn, Britt & Kelley, Alvin, H. Cecil Baker, Rosenberg, W. G. Walley, Jr., Beaumont, for appellee.

BARRON, Justice.

This is a plea of privilege case in which the district court of Brazoria County, without the intervention of a jury, rendered judgment overruling the respective pleas of privilege of the defendants, Ada Oil Company and Edwin E. Teston, of Harris County, Texas, and Elmer Weisinger, of Montgomery County, Texas, to be sued in the respective counties of their residence. The pleas of privilege were controverted by Richard A. Dillaberry, plaintiff, and the above defendants have duly perfected their appeals to this Court. Plaintiff relies upon Subdivisions 4 and 9 of Article 1995, Vernon's Ann.Tex.Civ.St., to maintain venue of this malicious prosecution action in Brazoria County, Texas. The named defendants in the action were Ada

Oil Company and Phillips Petroleum Company, both Delaware corporations, Elmer Weisinger, Edwin E. Teston, B. C. Murray, Frank Bell, Dave Clark, Larry Evans, Bert Patten, Joe W. Meaders, Warren Hightower and George W. Beebe, Jr. At the conclusion of the hearing herein, plaintiff took non-suits against Phillips Petroleum Company, B. C. Murray, Frank Bell, Dave Clark, Larry Evans and Bert Patten, leaving Ada Oil Company, Teston, Weisinger, Meaders, Hightower and Beebe as defendants. Meaders, Hightower and Beebe are resident defendants of Brazoria County, Texas, and they, of course, did not file pleas of privilege.

Ada Oil Company, Teston and Weisinger, defendants, are appellants herein, and Dillaberry, the plaintiff, is appellee.

Dillaberry alleges in his petition that he was unlawfully and maliciously arrested and jailed on complaints of Weisinger, Meaders and Hightower without probable cause for the alleged offense of presentation of a credit card with intent to defraud in violation of Art. 1555b, Vernon's Ann. Penal Code, and that he was thereby maliciously deprived of his liberty for more than seven months. He seeks the sum of $750,000.00 actual damages, and alleges exemplary damages in the sum of $750,000.00. The original arrest is alleged to have occurred at Conroe, Montgomery County, Texas, on July 17, 1966. Plaintiff claims that all of the defendants unlawfully and maliciously conspired together to cause and did cause the alleged malicious prosecutions complained of.

Plaintiff was a former lessee dealer of a Phillips 66 service station owned by Ada Oil Company, plaintiff having operated such service station under a lease agreement with Ada during the period from July 15, 1965 to about July 8, 1966, at which time the lease arrangement was mutually terminated by the parties. At various times prior to the period during which he operated the Ada station as the lessee dealer thereof, plaintiff had operated, as

lessee dealer, a Mobil station, which later changed to Tidewater, for one year, and a Gulf station in Houston, as lessee dealer thereof, from 1963 to 1965. Plaintiff admittedly had had considerable experience in the operation of service stations and was familiar with the rules and regulations governing the honoring of credit cards by service stations. While plaintiff was operating the Ada station, he was issued two Phillips Petroleum Company credit cards, and he also possessed at all material times Union Oil Company and Shell Oil Company credit cards. Although admittedly he never used his Phillips credit card at any time while operating the Ada station, during the period from July 9, 1966 (a day or two after he checked out of the Phillips 66 station), through July 16, 1966, plaintiff purchased on his Phillips credit card a total of 26 tires, 2 batteries, 4 shock absorbers and gasoline at a total credit charge of about $1,000.00. Such purchases were made by using his Phillips credit card at various Phillip 66 service stations in La Porte, Conroe, Houston, Pasadena, Old Ocean, Freeport, West Columbia and Rosenberg, Texas. During such time plaintiff made no purchases on any credit card other than his Phillips card.

When plaintiff checked out of the Phillips 66 station about July 7, 1966, there was a dispute concerning his accounts. Although the record is not entirely clear, plaintiff was entitled to a credit of $1,642.-14 for his inventory transferred to Ada at the time, but he owed Ada about $3,339.30 for various things, including chargebacks on various credit purchases and unauthorized sales made by Dillaberry. The unauthorized sale of tires (failure to mount the tires as required), and advancement of cash to certain customers on the credit card were among the repeated violations of the terms of the credit arrangements. When the sales were in violation of Phillips' credit terms, the accounts would be charged back by Phillips to Ada, who in turn would attempt to collect from the dealer who made the sales. At least four such unauthorized series of sales by Dilla-

berry, together with other items, caused him to owe Ada about $1,697.16 at the time he checked out of the station. While the record is not clear as to the exact amount allegedly owed by Dillaberry, he did acknowledge the debt or a certain portion of it. He stated, however, that he had no money to pay it, but later stated that he had a "trust fund" in California in the amount of $1,200.00. He further stated that he purchased the 26 tires on an installment plan to facilitate the selling of certain automobiles, and that the installment charges were incurred to give him time to pay. He stated also that Ada had "confiscated" his station, and that it was customary to advance cash and sell tires unmounted to special customers, though the rules were known to be otherwise. He did not, however, show of record that cash was advanced on the credit cards, and he admitted selling many tires unmounted. It is clear that plaintiff was dissatisfied with the ultimate results of the state of his account with Ada, and that his feelings toward Ada were unfriendly.

When Ada Oil Company learned that Dillaberry was purchasing tires, accessories and gasoline at various stations in the area in what it considered to be suddenly excessive amounts, it immediately began an attempt to revoke plaintiff's credit card. On July 12, 1966, David Clark, Division Credit Manager for Ada Oil Company, called R. A. Winter of Phillips Petroleum Company in Kansas City, Missouri and requested that Dillaberry's credit card be cancelled, which Winter did for Phillips on July 12, 1966. Ada Oil Company is a jobber who purchases Phillips products for re-sale. Ada owns its own service stations, which it leases to various operators, and Ada clearly has the right to cancel a credit card so far as any purchase at one of its stations is concerned. Clark signed a notice of cancellation of Dillaberry's credit card, and mailed the letter to Dillaberry's address at Deer Park, Texas, on July 14, 1966. The letter, however, was not received by Dillaberry, though it was sent by registered mail, "return receipt re-

quested." There is a note on the envelope showing "notified, 7–15, Al," apparently made in compliance with a notice required by postal regulations concerning registered mail, and pertains to a notice to pick up a registered letter. The reason for non-delivery was shown as "unclaimed" on July 15. Phillips sends out stop credit bulletins on Fridays of each week, and while cancellation of the card by Phillips and Ada was completed on the 12th, and Ada received from Phillips confirmation by the 14th, Dillaberry's card was not on the regular stop credit bulletin of Phillips until July 22, 1966, when it reached the hands of the various service station operators. However, Ada notified their dealers by telephone in Pasadena, Deer Park and south and east Houston areas on July 12th to the 14th that plaintiff's credit card had been cancelled and not to honor it, and Ada warned them of the consequences.

On July 16, 1966, Dillaberry and another man drove into the Phillips 66 station of defendant, Joe W. Meaders, at West Columbia. The man with plaintiff asked if they could buy a couple of tires on a credit card. Meaders agreed to sell if the credit card was a good one, and determining that the card looked to be in order, though it was the "expiring kind" (the card was to expire on its face at the end of September, 1966), Meaders sold Dillaberry $104.13 worth of tires and a battery on the credit card. The delivery ticket, however, was dated July 15, 1966. He sold the merchandise on a Saturday, and on the following Monday he got notice by mail advising him not to honor such card. Meaders telephoned Teston at Ada Oil Company offices in Houston, and Teston told him that since Meaders did not mount the tires the sale was his personal responsibility. Teston told him that it was a "hot" credit card and was "no good." On Teston's inquiry, Meaders told him he would be willing to file charges, and the two agreed to meet later at the district attorney's office at Angleton to "see what could be done." The Brazoria County District Attorney, Honorable Ogden Bass, testified that Meaders, Teston and probably Deputy Sheriff Littleton came into his office, and they had a discussion of the affair concerning plaintiff. Further investigation was required. He accepted the complaint after reviewing it as meeting the standards, though he was concerned about the matter of notice to plaintiff of cancellation of the credit card. Evidence was presented to the District Attorney in a letter to Mr. Littleton, signed by Mr. Teston, the Ada employee, to which letter was attached affidavits of Meaders, Mrs. Beatrice Nesmith, Walter Stone, Jr. and George W. Beebe, Jr., and promising to obtain an affidavit from defendant; Hightower. After Mr. Bass read the affidavit of George Beebe, the formal charge against Dillaberry was filed. Two complaints were finally filed, the other being filed at a later date by Mr. Hightower. Both cases were no-billed by the Brazoria County Grand Jury. The District Attorney talked with Mr. Dillaberry while he was in jail and told him that restitution was a step in the right direction, but there was no agreement made by the District Attorney. An informal complaint was also made by one Biggs. Dillaberry, through the District Attorney's office, paid the charges for merchandise held by Meaders and Biggs, but the Hightower account was not paid according to Mr. Bass' knowledge. The offense was alleged to have occurred on July 15 in the Hightower case, and on July 16 in the Meaders case. Mr. Bass stated hypothetically that if he had known that Dillaberry's credit card had not been revoked until after July 15, 16 or 17, he would not have accepted the complaints, because his version of the law was that an expired or revoked credit card was necessary *or* an intent to defraud was required under Art. 1555b, V.A.P.C. He stated that Meaders and Hightower told him that they had learned that the credit card had been revoked by Ada prior to their sales to Dillaberry, and such information was in the probable cause affidavits. Based on the information and affidavits the

complaints were filed and accepted, and a warrant for the arrest of plaintiff was issued. Mr. Bass stated that it would make no difference who revoked the card, whether Phillips or Ada. Restitution was taken into consideration by the Grand Jury but was not necessarily controlling. The District Attorney further testified that if the facts recited in the Beebe statement were correct, probable cause did exist for the filing of the complaints. The action of the Grand Jury was subsequent to the restitution made to Meaders and Biggs. As far as Meaders was concerned, his complaint based on the affidavit of Mr. Beebe would afford Meaders probable cause for filing the complaint. It was his recollection that Mr. Teston did most of the talking during the conference. Mr. Bass testified that he had no reason to believe that anybody was concealing anything, that a full disclosure was apparently made, and that the Beebe affidavit showed oral notice to Dillaberry that his credit card had been cancelled. Such information would be applicable to the Hightower and Meaders' cases. He testified that under such information probable cause for filing the complaints was afforded. The money to pay complainants came from Mr. Cyphers, plaintiff's attorney, who had received $1,200.00 from plaintiff's wife in California to pay plaintiff's obligations. The District Attorney, based upon the difficulty of the notice problem and the fact that restitution had been made, recommended to the Grand Jury that the plaintiff be no-billed, but he stated that if the credit card had actually been revoked as of July 15, 16 and 17, then "we had probable cause." But if the card had not been revoked, probable cause would not have existed.

The witness George W. Beebe, Jr. testified, and his affidavit shows, that Dillaberry and another man came into his station in Alvin, Texas and bought some gasoline. When plaintiff's credit card was presented to him he told Dillaberry that he could not honor his card, because Mr. George Monteau, an Ada distributor, had told him by telephone not to honor plaintiff's card and that it was not good. He received the word about an hour before plaintiff came into the station. Plaintiff paid for the gasoline in cash and left. The affidavit states that the occurrence was on July 15, 1966. Beebe, however, stated by deposition only that the matter had occurred in the summer of 1966. A Mr. Stone, of Galena Park, also refused to honor plaintiff's card, and plaintiff stated that "it could have been July 15, 1966." Stone's affidavit in evidence shows July 15. Warren Hightower's later affidavit shows that purchases made from him occurred on July 15, 1966.

Plaintiff further made purchases at Hughes Service Station in Rosenberg, Fort Bend County, Texas, on July 16, 1966 and charges were filed in Fort Bend County for the same offense involving use of the card for purchases totalling $101.71. He was transferred to the Fort Bend County jail in October, 1966, and though the record is not clear, he was apparently no-billed by the Fort Bend County Grand Jury about February 2 or 3, 1967.

On Sunday, July 17, 1966 defendant Weisinger, a Sergeant with the Conroe Police Department, received a telephone call from one Tunnie Castleshouldt, who operated Tunnie's 66 Station there, and he told the officer that Richard Dillaberry and another man had just been to his station and tried to buy four tires on a credit card. Castleshouldt said he told the men that the card was "no good" and had been cancelled. He told the officer that the men had just left and were headed toward town. Weisinger instructed officer Singleton to go north on Highway 75 and Weisinger went south on the highway. Weisinger received a call from Singleton which indicated that the men had been arrested and that the officer was bringing them to the office. Dillaberry testified that Singleton cursed him after the arrest. This occurred about 1:00 o'clock p. m. When they arrived Weisinger told the men to have a seat in the hall, and Weisinger called Castlesh-

ouldt to get more details of the occurrence. When further information was obtained, Castleshouldt told the officer to call a Mr. Dave Clark in Houston, and when he got in touch with Clark he was informed that the plaintiff's credit card had been cancelled. Clark informed Weisinger of the registered letter sent to plaintiff and of the fact that other station operators had refused credit. Weisinger was satisfied after receiving such facts from Castleshouldt and Clark that a criminal charge was in order, and he placed Dillaberry in the city jail until the next morning about 7:30 a. m., when he was taken before Judge Turner, Corporation Court Judge and a magistrate. Weisinger tried to locate the Justice of the Peace on the 17th but could not find him, whereupon he called Mr. Oualline, the District Attorney, for advice. The District Attorney advised Mr. Weisinger to file the charges in corporation court and when a Justice of the Peace was found, to dismiss the charges or transfer them and refile in the Justice court. On the morning of July 18, Judge Turner advised Dillaberry of his constitutional and statutory rights and of his right to retain counsel. On July 19 charges were filed with the Justice of the Peace at Willis, Texas, seven miles away. The original complaint charged plaintiff with unlawfully presenting a revoked credit card on July 17, 1966 to Castleshouldt with intent to defraud, knowing it to be revoked. A similar charge was filed with the Justice of the Peace on the 19th, after which plaintiff was transferred to the Montgomery County jail and placed in the custody of the sheriff.

Sometime before plaintiff's transfer to county jail, Clark and Weisinger talked with Dillaberry. Weisinger testified that Dillaberry had been "raising sand" about getting his bills paid, and he said he wanted a bill from Ada Oil Company to straighten up. Clark brought the bill with him to Conroe. While there is discrepancy in the testimony of Clark and Weisinger about what happened on the occasion, either Clark or Weisinger handed the acknowledgement of Ada's claim to Dillaberry, who signed it and returned it either to Clark or Weisinger. Dillaberry, however, testified that Weisinger complained about plaintiff's "hollering about his rights," said insulting things to him and threatened to take his mattress away from him if he continued to complain about his rights; that when plaintiff got out of jail if he filed against them he had better have a rag over his face or they would send plaintiff back on a slab to Houston, and "For your information we can get you bumped off in that cell for $20.00." Plaintiff further testified that Weisinger told him his bond was $50,000, because Dillaberry was a thief, and that if he didn't sign the bill to Ada he would be beaten until he did sign it. The bond, however, was for $2,000.00 and appellee was sent to Brazoria County on August 5, 1966 on charges in that county. Appellee knew what his bond was. Weisinger handed the signed bill to Clark and both left. A night or two later, Weisinger questioned plaintiff for about an hour and a half. He asked plaintiff about various matters, including the Dano transaction, and he was accused of using other credit cards which had been delivered to him in his Phillips station. Weisinger told plaintiff he didn't believe anything he said, and that "he and Ada Oil Company were going to file against me in every county that he could get to file against me." Plaintiff testified that no one else was present at the above times.

Clark and Weisinger denied mistreatment of Dillaberry. Weisinger admitted that he considered the plaintiff to be a thief after he made his investigation. He testified that he had discovered that plaintiff was tried in Georgia in 1935 for armed robbery, but that he had been found not guilty. When asked whether plaintiff had on handcuffs when he was questioned, Weisinger denied it and stated that he did not consider plaintiff to be vicious, and that he never saw a thief who was "real bad." Weisinger denied that he had any connection with Ada, Phillips or anyone else,

and that he was simply trying to do his duty as an officer to make a case against someone who he considered to be guilty of a criminal offense in Montgomery County. He denied that Ada Oil Company was working with him except to assist in the investigation and to give necessary facts. He testified that he knew nothing of the prosecutions in Fort Bend and Brazoria Counties, and further, that he had no knowledge of what happened to plaintiff after he was transferred to the sheriff on or about the 19th. He did say, however, that on February 3, 1967, he had filed another charge against plaintiff after the Montgomery County Grand Jury had no-billed plaintiff, and that he had placed a "hold" on him with the sheriffs of Fort Bend and Brazoria Counties. Justice of the Peace Bert Patton testified that he had filled in the complaint after obtaining the necessary information from Weisinger on February 3, 1967, and that his wife's signature was on the complaint. His wife helps him in connection with his work, and he had been in office only since January 1, 1967. There are inferences to show that the specific data for the complaint was filled in as late as 1968 by the Judge. However, plaintiff was released in Fort Bend County, and plaintiff made the necessary bond and was released without being again jailed in Montgomery County on such warrant.

As above stated the Grand Jury at Conroe no-billed plaintiff on the original complaint before February, 1967. However, the Grand Jury did indict plaintiff on the same charge a few months later, and the indictment is still pending. He was indicted before August 22, 1967. The Montgomery County District Attorney testified that when restitution is made, as it was in this case, the indictment is not pressed, thus the reason for failure to indict the first time. The District Attorney advised Weisinger that probable cause existed in the case, and that the arrest without a warrant under the circumstances was lawful and proper. Nothing was ever done about the formal complaint of February 3, 1967.

While plaintiff was visiting several towns to buy tires, accessories and gasoline, he used at least two cars, a 1955 or 1956 Buick and a 1961 Ford stationwagon. He was usually accompanied by another man. Before he checked out the filling station on July 7 or 8, he could have purchased tires at dealer's cost, which is substantially lower than a retail sale. He began buying tires at retail at Phillips stations only a day later. He testified that the reason was that he had no money and that Ada had "confiscated" his station. As above stated, however, he later said he had a $1,200.00 trust fund in California. He could not give the name of the trust, but his wife did send $1,200.00 from California to pay his debts. Further, he admitted that he did not tell other station operators that he had been denied credit on his card, but that he simply handed them the card and asked them to check it. Plaintiff testified that his purpose in going from town to town was to look for a spot for a wrecking yard and that he had all the equipment necessary to go into such business. He did not, however, testify that he had consulted with anyone regarding the lease or purchase of any property for such purpose. Dillaberry's account with Ada was charged off as a bad debt.

Appellants each contend that the trial court erred in denying their pleas of privilege, because plaintiff wholly failed to prove a bona fide cause of action against one or more of the resident defendants under Subdivision 4 of Article 1995, and failed to prove that any of the defendants committed a crime, offense or trespass against him in Brazoria County, as required by Subdivision 9 of Article 1995.

It is elementary and Texas courts have consistently held that to maintain an action for malicious prosecution it must be proved by plaintiff that there was a prosecution by the defendants, that it was malicious, that it was without probable cause,

that the prosecution has ended in acquittal, and that damages resulted to the plaintiff. The failure of plaintiff to prove any one of the above elements is fatal to his case. An action for malicious prosecution cannot be maintained without showing a want of probable cause. Montgomery Ward & Co. v. Kirkland, 225 S.W.2d 906 (Tex.Civ.App.), writ ref. n. r. e.; 37 Tex. Jur.2d, Sec. 16, p. 537, and cases cited; 54 C.J.S. Malicious Prosecution § 18, p. 970. Even though the plaintiff is innocent of the criminal offense involved, there can be no recovery if defendants had probable cause for instituting the prosecution. Deaton v. Montgomery Ward & Co., 159 S.W. 2d 969 (Tex.Civ.App.), writ. ref., w. m.; 37 Tex.Jur.2d, Sec. 23, p. 546; 54 C.J.S. Malicious Prosecution § 27, p. 986. And an acquittal or the prosecutor's abandonment of the prosecution does not show or raise a presumption of the want of probable cause. Bekkeland v. Lyons, 96 Tex. 255, 72 S.W. 56, 64 L.R.A. 474; Prosser, Law of Torts, (3rd Ed.), p. 864; 37 Tex. Jur.2d, Sec. 20, p. 540, 541, and cases cited.

■ Texas courts have uniformly applied the rule that a party filing or causing the filing of a criminal complaint does so upon probable cause where he, in good faith, makes a full and fair disclosure of the facts and circumstances known to him and the complaint is thereafter filed. Sebastian v. Cheney, 86 Tex. 497, 25 S.W. 691; Missouri, K. & T. Ry. Co. of Texas v. Groseclose, 50 Tex.Civ.App. 525, 110 S.W. 477, no writ hist.; Andrews v. Dewberry, 242 S.W.2d 685 (Tex.Civ.App.), writ ref., n. r. e. The above rule is not applicable unless the party filing the complaint acts in good faith in disclosing to the prosecuting attorney all facts known to him, and if defendant knows that plaintiff is not guilty of a criminal offense, probable cause does not exist, and a suit for malicious prosecution may be maintained if other elements are proven. See J. C. Penney Co. v. Gilford, 422 S.W.2d 25 (Tex. Civ.App.), writ ref., n. r. e.

Applying the above rules to the facts in the present case, it was clearly shown that appellee, Richard A. Dillaberry, in a period of about eight days, purchased on his credit card a total of 26 automobile tires, two batteries, four shock absorbers and gasoline at various Phillips 66 service stations. In that short period of time he ran up a total bill of approximately $1,000.00, and made his purchases in about eight different towns or communities. He had been operating a Phillips 66 station for about a year and had never before used his credit card until July 9, 1966, about one day after he checked out of the station. He admitted that he made unlawful or irregular sales and advancement of cash to certain customers while he was operating the station. When he checked out of the station he admitted that he had no money, but he later stated that he had a trust fund. His wife did send him money later to pay his debts. He could have purchased the tires at dealer's cost as late as July 7, but he did not choose to make that saving, purchasing all of the tires, etc. at retail cost from various dealers, whom he did not know, at a substantially higher price. He purchased the tires from the various retail dealers without having them mounted. He knew that such was a violation of the credit rules and regulations required by Phillips and Ada, and that if such fact was learned by the companies, the retail dealers were personally liable for the sales. He ignored or failed to obtain the registered letter which was mailed to him on July 14 notifying him in writing that his credit card had been cancelled on the 12th. He was warned by at least three retail dealers that his credit card had either been cancelled or was "no good" and was refused credit sales at those places. His feelings toward Ada Oil Company were unfriendly, if not resentful, by reason of the fact that Ada refused to pay him money when he checked out of his station, and he referred to Ada's "confiscation" of his station. In spite of all of the above, Dillaberry continued to attempt to use his credit card and obtain expensive merchandise thereon in such a manner as

to lead a reasonable person to believe that his intent was to defraud Phillips, Ada or the individual dealers. He continued to present his credit card to purchase merchandise until July 17, when he was arrested at Conroe.

We hold that Meaders, the retail dealer at West Columbia, had probable cause to file the complaint against Dillaberry. The complaint was predicated upon the facts personally known to Meaders at the time and also upon an affidavit by George W. Beebe, Jr., to the effect that the affiant, on July 15, 1966, had refused to accept appellee's credit card and told him, the appellee, that he could not honor the card, because his Bulk Agent had said it was "no good." Since Meaders did not mount the tires sold to Dillaberry on the credit card, any loss therefrom would have to be borne by him. Meaders testified that he had seen the affidavit of Mr. Beebe. Moreover, the record shows without dispute that the credit card was actually revoked on July 12, 1966, and that every effort was made to notify Dillaberry. Honorable Ogden Bass, the District Attorney, after a conference with Meaders and Teston, accepted Meaders' complaint after a discussion and a review of the record. After consideration of the Beebe affidavit, the District Attorney took the complaint, filed it and issued a warrant for appellee's arrest. Mr. Bass, however, was concerned about the notice to appellee of the cancellation of his credit card. The charges apparently were filed under Art. 1555b, V.A.P.C., which provides as follows:

"Section 1. It shall be unlawful for any person to present a credit card or alleged credit card, with the intent to defraud, to obtain *or attempt to obtain* any item of value or service of any type; or to present such credit card or alleged credit card, with the intent to defraud, to pay for items of value or services rendered.

"Sec. 2. It shall be unlawful for any person to present a credit card, with the intent to defraud, *which has expired or has been revoked with the knowledge of such expiration or revocation.* The presentation of an expired or revoked card to obtain *or attempt to obtain* any item of value, service of any type, or to pay for such items of value or services rendered shall be prima facie evidence of knowledge that such credit card had expired or had been revoked, if the person making such presentation shall not have paid to the person so honoring or issuing the card the total amount charged for the items of value or services within ten (10) days after being given notice from such person so honoring or issuing the card that said credit card had expired or been revoked at the time the purchase was made, which notice shall also state the amount due on such purchase." (Emphasis added).

Terms are explained in the Article, including "notice," which pertains to the ten-day notice required above.

■ While the charges were filed under Section 2 above, the charges could have been filed under Section 1, which would have rendered actual notice immaterial. Under the facts above recited, we believe that a conviction could have been obtained under Section 1, even under the charges actually filed, if proof of notice to appellant had failed. At least there existed facts and circumstances which would excite the belief, in a reasonable mind, acting on the facts within the knowledge of the prosecutor, that the person charged was guilty of the crime for which he was prosecuted. J. C. Penney Co. v. Gilford, supra; Landa v. Obert, 45 Tex. 539; Moran Utilities Co. v. Childs, 392 S.W.2d 536, 538 (Tex.Civ.App.), writ ref., n. r. e. And we believe the criminal rule is applicable here to the effect that unnecessary matters alleged in the charge or indictment not descriptive of an offense can be treated as surplusage, provided an offense is charged by the remaining portion of the charge or indictment. See Goodwin v. State, 70 Tex.Cr.R. 600, 158 S.W. 274; Germany v.

State, 154 Tex.Cr.R. 454, 227 S.W.2d 815; 30 Tex.Jur.2d, Indictment and Information, Secs. 25 and 61. The penalty and the transaction are the same. Moreover, if there is probable cause for belief in guilt of an offense which is substantially similar to that for which the appellee is prosecuted, the conditions to liability for malicious prosecution are lacking. Benford v. Bledsoe, 26 Ga.App. 361, 106 S.E. 202; Steimling v. Bower, 156 Pa. 408, 27 A. 299; 15 Tex.L.Rev. 175.[1]

■ The District Attorney stated that Meaders' complaint, based partly on the affidavit of Mr. Beebe, would afford Meaders probable cause for filing the complaint against Dillaberry. He further stated that he had no reason to believe that anybody was concealing anything, and that a full disclosure was apparently made by Meaders and Teston. He further stated that if the credit card had been revoked by July 15, probable cause existed. We hold that the evidence shows without dispute that the card had been revoked, and that a reasonable, cautious person would have probable cause to believe that a crime had been committed under the circumstances.

While the same rules might apply to the Hightower complaint, which was filed on November 2, 1966, Dillaberry was never deprived of his liberty by reason of such complaint. Appellee was transferred to Fort Bend County on October, 1966 to answer a charge filed there (the details of which were never developed) and was released after he was no-billed in that county. No damage could have resulted by reason of the Hightower complaint. See Hott v. Yarbrough, 112 Tex. 179, 245 S.W. 676, 677–678 (Tex.Com.App.), op. adopted; Usher v. Skidmore, 28 Tex. 616, 617.

It is undisputed that Dillaberry instructed his attorney to pay all charges made by him at the various service stations involved but that he did not know whether all of them had been paid. Meaders, however, was paid. The District Attorney recommended to the Grand Jury that appellee be no-billed because of the difficulty of proof of notice and because restitution had been made, but he properly made no agreement with appellee in that connection. As to the effect of a compromise or restitution, compare Lloyd v. Alameda State Bank, 346 S.W.2d 947 (Tex.Civ.App.), writ ref., n. r. e.; Davidson v. First State Bank of Andrews, 310 S.W.2d 678 (Tex.Civ.App.), no writ hist.; Sullivan v. O'Brien, 85 S.W. 2d 1106, 1115 (Tex.Civ.App.), writ ref.

■ If the defendants stated the facts fully and fairly to the District Attorney, a highly competent one in this case, and such officer determines that such facts constitute a crime and proceeds to formulate the necessary papers to set the prosecution in motion, the complaining defendants are not liable in an action for malicious prosecution, since if there is any fault, it is not the defendants'. Sebastian v. Cheney, supra; 36 A.L.R.2d 812, and cases cited. This record reflects nothing which was withheld by defendants, and there is nothing shown which would indicate that defendants believed appellee to be not guilty of the criminal offense charged. While the using of criminal process for private purposes, such as the coercion of the payment of a debt when the complaining party knows the accused is not guilty of crime, may show malice and want of probable cause, a motive on the part of the informant to get back his own property is not necessarily an improper one under the law of malicious prosecution. It is not improper if it coexists with an honest belief that a

1. This rule is distinguishable from the majority rule providing that a defect in the formal accusation on which a criminal proceeding is based does not prevent maintenance of a malicious prosecution suit. The fact that a charge fails to state all essential facts constituting the criminal offense or fails to charge any offense known to the law, other elements being present, offers defendants no support. See 36 A.L.R.2d p. 788, 790.

crime has been committed and if there exists probable cause for a criminal prosecution. 54 C.J.S. Malicious Prosecution § 42 b, p. 1006; p. 1080, note 9; p. 974, note 28; Prosser, Law of Torts, (3rd Ed.), pp. 859, 860; Grissom v. Lopez, 280 S.W. 613 (Tex.Civ.App.), writ dismd.; 37 Tex. Jur.2d Sec. 13, p. 535. It is usually impossible to separate the desire to recover money wrongfully taken from the accuser from an honest belief that a crime has been committed. We find no evidence in the record to support the proposition that charges were filed by defendants, knowing that Dillaberry had committed no crime, solely for the purpose of collecting a debt.

▇ The able trial court apparently overruled defendant Weisinger's plea of privilege partly on the ground that a conspiracy existed, or by reason of the fact that the defendants, including Weisinger, were joint tort-feasors. Weisinger's arrest of Dillaberry was lawful and was based upon probable cause, in that he was informed that a crime had been committed in the county. He received a telephone call from Castleshouldt, whom he knew personally, and was informed that such crime had been committed, and that appellee was about to escape or leave the county. Weisinger immediately, with officer Singleton, arrested the appellee and brought him in for questioning. Upon further information give Weisinger by Castleshouldt to the effect that appellee had attempted to obtain merchandise by presenting a revoked credit card, Weisinger held Dillaberry until he could find a magistrate. The next morning he took Dillaberry before a magistrate, the corporation court judge, who properly warned appellee of his rights upon the filing of *charges*. Under such circumstances the arrest was lawful. Article 14.04 and 2.13, Vernon's Ann.Tex.Code of Crim.Proc.; Weeks v. State, 417 S.W.2d 716 (Tex.Cr.App.). A judge of the corporation court of Conroe, Texas, is a magistrate. Article 2.09, Tex.Code of Crim. Proc. Appellee was transferred or charges

were again filed with a justice of the peace the next day on July 19, 1966, when the justice was located and when such was possible. Defendant had been advised by the District Attorney that probable cause existed for the arrest and detention.

▇ The fact that Dillaberry testified that Weisinger abused him while he was in jail in Conroe has nothing to do with a conspiracy, nor does such fact prove that Weisinger was a joint tort-feasor with Ada Oil Company, Teston, Meaders or any of the remaining defendants. The facts show, and Dillaberry admitted, that he wanted a bill from Ada Oil Company. Weisinger, who had been advised to call Dave Clark, of Ada Oil Company, by Castleshouldt told Clark that appellee wanted a bill so he could straighten up his accounts. Clark brought the bill to Conroe, and Weisinger's conduct, if true, could raise no inference that Weisinger was acting in concert with Clark, Ada or any of the remaining defendants. Moreover, the charge against appellee is still pending on the identical occurrence in Montgomery County. There is no evidence beyond speculation in the record to connect Weisinger or his activities with the affairs in Brazoria and Fort Bend Counties. The whole theory of appellee's case is apparently based upon the assumption that there was a conspiracy by all defendants to coerce the payment of a debt through criminal process. The evidence considering appellee's burden of proof does not warrant such a theory, and there is no competent evidence to sustain it. If Weisinger is liable in damages to Dillaberry it is not for malicious prosecution, and the venue of such action is properly in Montgomery County. Weisinger's plea of privilege should have been sustained.

▇ It is true that a conspiracy may be proved by circumstantial evidence, but the rule of Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059, requiring that evidence be of such probative force to raise more than a mere surmise or suspicion of the exist-

914

ence of a fact to constitute "any evidence" of that fact, applies in conspiracy cases as well as in other cases. Waco Drug Co. v. Hensley, 34 S.W.2d 832 (Tex.Com. App.); Kemp v. Harrison, 431 S.W.2d 900, 905 (Tex.Civ.App.), writ ref., n. r. e.; Terrell v. Olsen, 378 S.W.2d 719 (Tex.Civ. App.), no writ hist.

Defendants were sued for damages for malicious prosecution, which is made an offense by Art. 1298, V.A.P.C., and appellee relies upon exception 9 of Article 1995, V.A.T.S., his suit being based upon a crime, offense or trespass alleged to have occurred in Brazoria County, Texas. Proof of the fact of the commission of the crime, offense or trespass is an essential venue fact, as is proof of the place where it was committed. We have held that no crime, offense or trespass was proven by appellee in Brazoria County, and therefore the necessary venue facts have failed. Compton v. Elliott, 126 Tex. 232, 88 S.W. 2d 91 (Tex.Com.App.), op. adopted.

The same is true of exception 4 of Article 1995. We hold that no cause of action was proved against the resident defendants of Brazoria County. See Stockyards Nat. Bank v. Maples, 127 Tex. 633, 95 S.W. 2d 1300 (Tex.Com.App.), op. adopted.

The action of malicious prosecution is not favored in law. Public policy favors the exposure of crime, which a recovery against a prosecutor tends to discourage. The proof in malicious prosecution actions must be of a higher degree than that ordinarily required in civil cases, and it must be positive, clear and satisfactory. Sullivan v. O'Brien, supra; Montgomery Ward & Co. v. Kirkland, supra. Appellee did not prove his case satisfactorily, and he particularly failed to show a want of probable cause. It was his burden to do so. The matters discussed above are not defensive, but are a part of appellee's burden in connection with probable cause.

The judgment of the trial court is reversed, and the cause pertaining to Ada Oil Company and Edwin E. Teston is ordered transferred to a district court of Harris County, Texas. The cause as it pertains to Elmer Weisinger is ordered transferred to a district court of Montgomery County, Texas.