R. K. ELLIS, Appellant,

v.

SINTON SAVINGS ASSOCIATION, Appellee.

No. 505.

Court of Civil Appeals of Texas, Corpus Christi.

May 14, 1970.

Rehearing Denied June 11, 1970.

House, Mercer, House & Brock, Franklin D. Houser, San Antonio, for appellant.

Burnett, Burnett & Joseph, William Burnett, Sinton, for appellee.

## OPINION

SHARPE, Justice.

The original opinion herein is withdrawn and the following is substituted therefor.

This is a malicious prosecution suit brought by appellant claiming damages be-

cause appellee had allegedly caused him to be indicted in several criminal cases by the grand jury of San Patricio County, Texas. The trial court rendered summary judgment that appellant take nothing from appellee, from which this appeal has been taken.

The criminal cases arose out of the connection of appellant Ellis with appellee Sinton Savings Association, of which he was an organizer and president for a period of time, the indictments having been returned after cessation of appellant's association with appellee. Appellant was tried on one of the indictments (cause number 3100) and a hung jury resulted. He was retried in the same case and acquitted. While the original indictments were pending, appellee filed a civil suit in the U. S. District Court at Corpus Christi, Texas, against Westchester Fire Insurance Co., which had issued a fidelity bond covering appellant, seeking to recover $467,622.-85. The civil case was based generally upon allegations that appellant had engaged in a number of dishonest or fraudulent acts while connected with appellee, resulting in losses to appellee for which the bonding company was liable. The said civil suit was filed before the first criminal case was tried, was still pending after the second trial thereof, and was subsequently settled for an amount not disclosed by the record. Thereafter, the remaining criminal indictments against appellant were dismissed on motion of the district attorney. A civil suit was also filed by appellee in a state district court and is still pending. However, appellant has withdrawn any claim for damages based upon filing of the said civil suits.

Appellant's single point of error reads as follows: "The trial Court erred in granting Appellee's Motion for Summary Judgment for the reason that a fact issue was created by Appellant's Counter Affidavits."

Appellee's motion for summary judgment had attached to it various exhibits and supporting summary judgment evidence including the affidavit of John H. Flinn, District Attorney of the 36th Judicial District, and Kenneth W. Duke who was then the president of Sinton Savings Association. Appellant opposed appellee's motion for summary judgment and filed four counter-affidavits, one made by him and three by attorneys who had represented him or the above-mentioned bonding company in connection with either the civil or criminal cases heretofore and hereafter referred to.

■ The elements necessary for a malicious prosecution action are: 1) The commencement of a criminal prosecution against plaintiff, 2) which has been caused by the defendant or through defendant's aid or cooperation, 3) which terminated in favor of the plaintiff; 4) that plaintiff was innocent; 5) that there was no probable cause for such proceeding; 6) that it was done with malice; and 7) resulted in damage to plaintiff. Yianitsas v. Mercantile National Bank at Dallas, 410 S.W.2d 848, 850 (Tex.Civ.App., Dallas, 1967, n. w. h.); Flowers v. Central Power & Light Co., 314 S.W.2d 373, 375 (Tex.Civ. App., Waco, 1958, wr. ref. n. r. e.).

■ Appellant's petition alleged these essential elements of a cause of action for malicious prosecution. However, under applicable summary judgment rules we must hold that the record here establishes as a matter of law that there is no genuine issue of fact at least as to the second, third (with the one exception hereafter noted) and fifth of the above-mentioned essential elements of appellant's cause of action. Rule 166–A, Texas Rules of Civil Procedure; Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S. W.2d 41 (Tex.Sup.1965); Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958). In *McBride,* the Supreme Court held in part as follows:

"When a motion for summary judgment is supported by affidavits, depositions, stipulations or other extrinsic evidence sufficient on its face to establish facts, which, if proven at the trial, would entitle the movant to an instructed verdict,

the opponent must show opposing evidentiary data which will raise an issue as to a material fact, or must justify his inability to do so and seek appropriate relief under subdivision (f) of Rule 166–A * * *" 322 S.W.2d 500.

The rule stated in *McBride* is applicable here. The summary judgment evidence offered by appellee in support of its motion conclusively established its right to a favorable summary judgment in the absence of production by appellant of opposing summary judgment evidence legally sufficient to raise an issue or issues of fact concerning essential elements numbers two, three (with an exception to be discussed) and five of appellant's cause of action. These elements will be discussed in the order mentioned.

## WHETHER THE CRIMINAL PROSECUTIONS WERE CAUSED BY APPELLEE OR THROUGH APPELLEE'S AID OR COOPORATION

It is agreed that certain criminal prosecutions, by way of grand jury indictments, were instituted against appellant, and essential element No. 1 is established in his favor. However, as to essential element number 2, appellant contends that the summary judgment record does not establish as a matter of law that there was no genuine issue of fact as to whether the criminal prosecutions were caused by appellee or through its aid or cooperation. One of the affidavits filed by appellee in support of its motion for summary judgment was that of John H. Flinn, District Attorney for the 36th Judicial District of Texas, reading as follows:

THE STATE TEXAS
COUNTY OF SAN PATRICIO }

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared John H. Flinn, known to me to be a credible person and who, after having been by me first duly sworn, stated and deposed upon oath as follows, to-wit:

My name is John H. Flinn and I am a resident of Sinton, San Patricio County, Texas. I am over 21 years of age, am of sound mind, have never been convicted of any crime or offense and have personal knowledge of every statement herein made and am fully competent to testify to the matters stated herein.

I am a licensed and practicing attorney at law. I was elected District Attorney of the 36th Judicial District of Texas in the year 1958 and have been re-elected District Attorney continually from that year to the present time.

During the time that I have been District Attorney there have been seven criminal actions in the District Courts of San Patricio County, Texas, in which one R. K. Ellis, who was formerly president of Sinton Savings Association of Sinton, Texas, was defendant. Each of these cases was styled "The State of Texas vs. R. K. Ellis," each was on the docket of the District Court of the 36th Judicial District in and for San Patricio County, Texas, and the seven cases were numbered 3079, 3080, 3081, 3097, 3098, 3099 and 3100, respectively, on the docket of that Court.

The investigation and prosecution of each of the cases was performed by me as District Attorney and I am well acquainted with all facts and circumstances involved in each of the cases from their commencement through their termination.

Each of the cases was commenced during the session of the Grand Jury of San Patricio County, Texas, of the February, 1964, term of said District Court, at which time I initiated an investigation into acts of R. K. Ellis as president of Sinton Savings Association. No officer, director, agent or employee of Sinton Savings Association requested the investigation. No officer, director, agent or employee of Sinton Savings Association voluntarily furnished information to me which caused me to initiate

the investigation. No complaint against R. K. Ellis was filed by any officer, director, agent or employee of Sinton Savings Association. No information against R. K. Ellis was filed by any officer, director, agent or employee of Sinton Savings Association. No officer, director, agent or employee of Sinton Savings Association communicated to me in any manner any accusation that R. K. Ellis had committed any crime. No officer, director, agent or employee of Sinton Savings Association suggested to me that R. K. Ellis should be charged with any crime. The investigation was an independent investigation of the Grand Jury and myself.

During the course of the investigation no information was voluntarily furnished to me by any officer, director, agent or employee of Sinton Savings Association. The information which I obtained and presented before the grand jury was obtained through my own efforts and through subpoenas which I had issued.

After consideration of the evidence presented before it by me, the Grand Jury returned seven indictments against R. K. Ellis and they were filed and docketed in said court as the cases I have mentioned above.

During the time the cases were pending, no officer, director, agent or employee of Sinton Savings Association suggested that any of the cases be kept pending. During the time the cases were pending, no officer, director, agent or employee of Sinton Savings Association requested that any of the cases be kept pending. During the time the cases were pending, no officer, director, agent or employee of Sinton Savings Association suggested that any of them should not be dismissed. During the time the cases were pending, no officer, director, agent or employee of Sinton Savings Association requested that any of them not be dismissed. During the time the cases were pending no officer, director, agent or employee of Sinton Savings Association suggested that any of the cases be brought to trial. During the time the cases were pending no officer, director, agent or employee of Sinton Savings Association requested that any of the cases be brought to trial.

Two trials were held in the case numbered 3100 on the docket of said Court. No officer, director, agent or employee of Sinton Savings Association voluntarily furnished me with any information, evidence or assistance in my preparation for the trials. No officer, director, agent or employee of Sinton Savings Association voluntarily appeared at either trial to give evidence. In order to obtain information and evidence from Sinton Savings Association in my preparation for the trials, I went to Kenneth Duke, its president, and requested the information and evidence and it was furnished to me only after my request. In order to obtain witnesses from Sinton Savings Association to appear and testify at the trials, I subpoenaed those of its officers, directors, agents and employees which I felt could give the testimony I wanted.

Neither the commencement nor the continuation of any of the cases was caused by Sinton Savings Association, its officers, directors, agents or employees, or through the aid or cooperation of Sinton Savings Association, its officers, directors, agents or employees.

When I have herein mentioned the officers, directors, agents and employees of Sinton Savings Association, those designations include H. H. Webb, Kenneth W. Duke, Leo Owen, W. L. Roots, C. H. Mayo, Don Grant, H. A. Burnett, Kenneth Foote, Frank Sunderman, Wanda Havalik, Walter J. Bohne, J. C. Raineri, Thomas C. Ferguson, Audrey McKenzie, Ralph Freedson, Bruce Waitz, Wm. G. Burnett, R. L. Joseph, Susan Henry, Shirley Koliba, Mary Ann Creghan, Edith Sanders, Joyce Berry, Sigrid Smith, Betty Thurmond, Evelyn Gregor-

cyke, Linda Aigner, Maria Z. Jasso, Clifford Lee Golden, Edna Y. Conwell, Janie Gamez, and Andy Johnson, who I have been informed are all of the officers, directors, agents and employees of Sinton Savings Association from the commencement of my investigation as mentioned above until the present date.

(s)   John H. Flinn

Subscribed and sworn to before me by John H. Flinn this the 24th day of September, 1968, to certify which witness my hand and seal of office.

(s)  Fayola Romike
Notary Public, San Patricio
County, Texas
FAYOLA ROMIKE
Notary Public, Sinton,
San Patricio County, Texas

The affidavit of Kenneth W. Duke, who had been connected with Sinton Savings Association since October 1963, and had been president of it since March 1964, set out the names of all the officers, directors, agents and employees of Sinton Savings Association from February 1, 1964 to September 6, 1968, the date of the affidavit.

The affidavit of John H. Flinn along with the other summary judgment evidence relied on by appellee established as a matter of law that there was no genuine issue of fact concerning the essential element of appellant's case that the criminal prosecutions were caused by appellee or through its aid or cooperation. The affidavit of John H. Flinn contains the kind of factual evidence which our courts have relied upon in sustaining summary judgments in malicious prosecution cases. See Davidson v. First State Bank of Andrews, 310 S.W.2d 678 (Tex.Civ.App., El Paso, 1958, n. w. h.). The affidavit of Mr. Duke set out the names of the persons who conceivably could have acted for appellee in connection with the criminal cases. In the face of these affidavits and other summary judgment evidence it thereupon devolved on appellant to produce opposing summary judgment evidence sufficient to raise an issue of fact as to essential element No. 2 in order to defeat appellee's motion. Gulf, Colorado & Santa Fe Railway Co. v. McBride, supra. Appellant contends that he offered such opposing summary judgment evidence, but we cannot agree that the affidavits relied on by him contain sufficient admissible *testimony with probative force to raise the issue as to whether the commencement of the criminal prosecutions was caused by appellee or through its aid or cooperation.

■  The counter-affidavits relied on by appellant, in addition to his own, are those of attorneys Josh Groce, Franklin Houser, and James Onion. Groce represented the bonding company in the aforementioned federal court civil suit. Houser represented appellant in both the civil and criminal cases. Onion represented appellant in the criminal cases. Appellant's brief states his position concerning the counter-affidavits filed by him as follows: "The position of Flinn before affiants Groce, Houser and Onion is inconsistent with his affidavit. This creates a fact issue. The affidavits of Groce, Houser and Onion are hearsay to Appellee but they are admissible as impeachment against Flinn upon which Appellee's solely rely." We do not agree with appellant's stated position. A critical examination of the counter-affidavits relied on by appellant reflects that they were not sufficient to raise genuine issues of material fact as to whether the commencement of any of the criminal prosecutions was caused by appellee or through its aid or cooperation. This is true because the tendered evidence in such respect was either hearsay or conclusions or opinions and did not, in admissible form, contradict any of the material statements of fact contained in the affidavit of Flinn. See Crain v. Davis, 417 S.W.2d 53, 55 (Tex.Sup.1967.).

The counter-affidavits relied on by appellant tend to establish that after the second trial of cause number 3100 in May 1966, the district attorney advised counsel for Ellis that he was going to dismiss all of the criminal cases against Ellis; that on

the same date the district judge also advised counsel for Ellis that the district attorney had told the judge that all of the cases against Ellis would be dismissed; that over a period of time, counsel for Ellis contacted the district attorney who continued to reiterate that the cases would be dismissed, but they were not actually dismissed until November 21, 1967.

The affidavit of appellant Ellis in opposition to appellee's motion for summary judgment contains a number of statements relating to negotiations for settlement of the civil case against appellant's bonding company and for dismissal of the indictments against appellant, which tend to show that dismissal of the indictments was delayed until the civil case was settled, and, according to appellant, the attorney for appellee stated in effect that the pending indictments (which the district attorney had theretofore stated would be dismissed) were used as a lever to secure a settlement between the bonding company and appellee.

Appellant's affidavit also contained the following statements:

"I would like to further state that on February 14, 1964, I attended a meeting in Houston where there were several officers or stockholders of Sinton Savings Association present. Also present was an attorney by the name of Mr. Freedson. At the meeting it was explained to me that the Association was having problems with a block of loans that were in the Association and that unless I came up with some money to put in Sinton Savings Association that they, the group there acting for Sinton Savings Association, would have me indicted for some criminal offense. I offered to attempt to get the loans taken over by someone, but upon the basis of their threats to have me criminally indicted and having been told by the attorney Mr. Freedson, of other cases where persons had gone to prison, I gave the Sinton Savings Association $44,450.00 which is evidenced by the exhibits attached hereto. I have no way of knowing whether Sinton Savings Association did, in fact, instigate and promote my criminal indictment, but I do know that when I did not come up with more money to put into Sinton Savings Association I was indicted. I received several telephone calls from various people representing the Association wanting more money to be put on deposit with the Association. When I was unable to do this I was indicted.

The Sinton Savings Association threatened to have me indicted. I was indicted. Also, their attorney, Robert Joseph, in the presence of Kenneth Duke later admitted that they controlled the indictments and that they would not permit their dismissal until they received a settlement from the Westchester Fire Insurance Company which had a Bond on me. After the settlement was arrived at the indictments were dismissed."

The content of appellant's affidavit must be considered in the entire context of the summary judgment record which reflects the following circumstances. Appellant previously filed this case for malicious prosecution against appellee as cause number 13,865 on the docket of the District Court of San Patricio County, Texas. During the pendency of the previous case, appellee propounded to appellant an interrogatory under Rule 168, T.R.C.P., as follows:

"2. Do you contend that any act or acts proximately or efficiently causing the commencement or continuation of the cases, if any, you have specified in your answer to interrogatory number 1, was caused by defendant or through its aid or cooperation? If you answer in the affirmative, then specify: (a) a description of each such act, (b) the name of the officer, director, agent, or employee of defendant who performed the act, (c) the date the act was performed, (d) the place the act was performed, (e) the name of the person or persons present when the act was performed, (f) if the act consisted of or was evidenced by a writing, the substance of the writing and the name of the person or persons having

possession thereof, and (g) if the act consisted of a conversation, the substance of the conversation."

Appellant answered the interrogatory by a pleading setting forth sworn testimony disclaiming any knowledge as to the matters inquired of as follows:

"2. (a) Causing the indictment against R. K. ELLIS, and continuing the indictments of R. K. ELLIS, and the bringing of civil actions, or the causing of bringing of civil actions. (b) It is not known whether one particular officer and/or agent of the defendant performed the acts, but through discovery it is hoped that it will be determined who authorized the bringing of such actions, who authorized the continuing of such atrocities, and who authorized the bringing of the suits by and through their attorneys. (c) Unable to answer at this time. (d) Unable to answer at this time. (e) Unable to answer at this time. (f) We know of no writings. (g) We know the contents of no conversations."

The answers thus given by appellant to the interrogatory mentioned (and its subdivisions) were not legally sufficient to raise a fact issue concerning the essential element of whether appellee participated in causing the commencement of the criminal cases. The same inquiry was again presented to appellant in the present case by appellee's request for admissions in which appellee requested appellant to admit that the answers appellant had previously given to the interrogatories were true. Appellant's response to the latter request for admissions admitted appellant's continued inability to raise a fact issue as to the essential element of whether appellee participated in causing the commencement of the criminal cases.

▇ We are also of the opinion that aside from the above-mentioned interrogatories and appellant's answers thereto, the Ellis affidavit is insufficient to raise a genuine issue of material fact concerning whether the commencement of the criminal prosecutions was caused by appellee or

through its aid or cooperation. The affidavit testimony of Ellis is insufficient in such respect for several reasons: It is either inadmissible or lacks probative force; the statements are hearsay, conclusions or opinions; and they relate primarily to the indictments which were dismissed (more fully discussed hereafter with reference to essential element number 3). Even if some of the statements in the Ellis affidavit were admissible and tend to establish that appellee influenced delay in dismissal of the indictments or ultimately influenced their dismissal after the civil suit was settled, this does not constitute evidence that the criminal charges were caused by appellee or through its aid or cooperation. In any event the Ellis statements do not, in admissible form, contradict the affidavit of Flinn. Additionally, such statements do not constitute evidence of identity of the persons who allegedly threatened criminal prosecutions against Ellis or that they were appellee's agents acting in the scope of their authority so that their conduct would be legally attributable to appellee, although the names of its officers, directors, agents and employees during the pertinent period of time had been disclosed by the affidavit of Mr. Duke. We agree with appellee that the summary judgment record conclusively establishes the absence of a genuine issue of fact as to whether the commencement of the criminal prosecutions against appellant was caused by appellee or through its aid or cooperation, and essential element number 2 of a malicious prosecution case is absent.

## WHETHER THE PROSECUTIONS TERMINATED IN FAVOR OF PLAINTIFF

▇ The summary judgment evidence herein, again considered most favorably to appellant, establishes that the criminal cases herein involved (with one exception which will be hereinafter discussed) were ultimately dismissed after negotiations for settlement and actual settlement of a federal court civil suit filed by appellee here against Westchester Fire Insurance

Co., the bonding company for Ellis, appellant here. It was understood and agreed between all parties to that suit and by Ellis and his attorneys, according to appellant's summary judgment evidence, that should a settlement of that suit be reached appellee would guarantee dismissal of the criminal cases whch had not then been disposed of. After a considerable period of time, during which Ellis and his attorneys continued to seek dismissal of the indictments, and after an attorney for appellee had requested the district attorney to dismiss the indictments, they were in fact dismissed by the court. It is well settled that the dismissal of a criminal prosecution brought about by the procurement or compromise of the person therein accused is not such an end of the prosecution as will warrant an action for damages for malicious prosecution. Sullivan v. O'Brien, 85 S.W.2d 1106, 1115 (Tex. Civ.App., San Antonio, 1935, wr. ref.); Davidson v. First State Bank of Andrews, 310 S.W.2d 678 (Tex.Civ.App., El Paso, 1958, n. w. h.). Under the rule announced in these cases it is established as a matter of law in the instant case that there was no termination of the cases dismissed in favor of appellant, and element No. 3 essential to a malicious prosecution suit is also lacking.

The record establishes that as to criminal case No. 3100 the termination was ultimately in favor of appellant, and what has been said concerning the remainder of the cases which were dismissed is not applicable to that proceeding. As to case No. 3100 our decision will rest on the holding that the record establishes as a matter of law that there is no genuine issue of fact at least on the above-mentioned elements numbers 2 and 5, which are essential to a cause of action for malicious prosecution.

## LACK OF PROBABLE CAUSE

The summary judgment record in this case also establishes as a matter of law that there is no genuine issue of fact as to whether there was a lack of probable cause on the part of appellee or its agents in such connection.

The recent case of Ada Oil Company v. Dillaberry, 440 S.W.2d 902 (Tex.Civ.App., Houston 14th, 1969, wr. dism.), involved a malicious prosecution proceeding in which the court held that a cause of action for venue purposes was not established against the resident defendants because the plaintiff did not satisfactorily prove a want of probable cause. The court, speaking through Justice Barron, there held in part as follows:

"If the defendants stated the facts fully and fairly to the District Attorney, a highly competent one in this case, and such officer determines that such facts constitute a crime and proceeds to formulate the necessary papers to set the prosecution in motion, the complaining defendants are not liable in an action for malicious prosecution, since if there is any fault, it is not the defendants'. Sebastian v. Cheney, supra [86 Tex. 497, 25 S.W. 691]; 36 A.L.R.2d 812, and cases cited. This record reflects nothing which was withheld by defendants, and there is nothing shown which would indicate that defendants believed appellee to be not guilty of the criminal offense charged. While 'the using of criminal process for private purposes, such as the coercion of the payment of a debt when the complaining party knows the accused is not guilty of crime, may show malice and want of probable cause, a motive on the part of the informant to get back his own property is not necessarily an improper one under the law of malicious prosecution. It is not improper if it coexists with an honest belief that a crime has been committed and if there exists probable cause for a criminal prosecution. 54 C.J.S. Malicious Prosecution § 42b, p. 1006; p. 1080, note 9; p. 974, note 28; Prosser, Law of Torts, (3rd Ed.), pp. 859, 860; Grissom v. Lopez, 280 S.W. 613 (Tex.Civ.App.), writ dismd.; 37 Tex.Jur. 2d Sec. 13, p. 535. It is usually impossible to separate the desire to recover money wrongfully taken from the accuser from an honest belief that a crime has been committed. We find no evidence in the

record to support the proposition that charges were filed by defendants, knowing that Dillaberry had committed no crime, solely for the purpose of collecting a debt."

Even if the summary judgment evidence herein was sufficient to raise a genuine issue of fact as to whether the criminal prosecutions were caused by appellee or through its aid or cooperation (contrary to our holding), that record establishes as a matter of law that there was no genuine issue of fact concerning lack of probable cause for any participation of appellee in connection with all of the criminal proceedings against appellant. Under the rules stated and the reasoning in *Dillaberry* element No. 5 essential to a malicious prosecution suit is also lacking.

In view of our holdings concerning three of the essential elements of appellant's cause of action for malicious prosecution, further discussion is deemed unnecessary.

If this case had proceeded to trial on the merits, the trial judge would have been compelled on the basis of the record presented here to direct a verdict or render judgment in favor of appellee. The trial court properly granted appellee's motion for summary judgment.

The judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING

NYE, Justice (concurring).

Appellant's motion raises various questions relative to the quality of the summary judgment evidence. Among appellant's contentions is the argument that the opinions and conclusions contained in the affidavits of certain witnesses do not have probative weight, and that we have treated the motion for summary judgment as a general demurrer requiring the appellant to establish all of the elements of its cause of action, even when the element of probable cause was not at issue.

In an action on a motion for summary judgment where the motion is supported by affidavits sufficient on their face to establish facts which if proven at the trial would entitle the movant to an instructed verdict, the judgment sought should be rendered. Gulf, Colorado & Santa Fe Railway Co. v. McBride, 159 Tex. 442, 322 S.W.2d 492 (1958); Usher v. Glass, Sorenson & McDavid Insurance Co., 409 S.W.2d 880 (Tex.Civ.App.—Corpus Christi, 1966, ref. n. r. e.).

In reviewing the summary judgment proof, I believe that it establishes as a matter of law that there is no genuine issue of fact to at least one of the essential elements of appellant's cause of action. Rule 166–A, T.R.C.P.; Gibbs v. General Motors Corporation, 450 S.W.2d 827 (Tex.Sup. 1970).

The motion for rehearing should be overruled.