**Justo LEAL, Appellant,**

v.

**AMERICAN NATIONAL INSURANCE COMPANY, David Malcolm Azur, and Karen Brown, Appellees.**

No. 13–94–012–CV.

Court of Appeals of Texas, Corpus Christi.

June 6, 1996.

Rehearing Overruled Sept. 5, 1996.

Cynthia T. Sheppard, Houston, Marek & Griffin, Victoria, Alex R. Hernandez, Port Lavaca, for appellant.

Jack C. Brock, George W. Vie, III, Galveston, for appellees.

Before DORSEY, ONION [1] and AKIN [2], JJ.

## OPINION

ONION, Justice.

This is a summary judgment case. Appellant Justo Leal sued appellees, American National Insurance Company, David Azur and Karen Brown for malicious prosecution, libel

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

2. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

and defamation, and breach of duty of good faith and fair dealing. The trial court granted a partial summary judgment for the insurance company and Azur on the malicious prosecution claim. Subsequently, the trial court granted a final take nothing judgment an all remaining claims.

By his points of error, Leal attacks the summary judgment. He does not pursue on appeal the disposition of the other claims. We affirm the judgment in part, reverse the judgment in part as it relates to the summary judgment, and remand the malicious prosecution claims involved to the trial court.

### Background

The summary judgment proof shows that on April 1, 1985, Justo Leal began working as a full-time career agent for the American National Insurance Company (hereinafter ANICO). He was authorized to sell automobile home, life, and health insurance to the general public. Leal opened his office in Port Lavaca. Karen Brown began work as Leal's secretary. In October or November, 1986, ANICO received an automobile insurance application on behalf of Gladys Floyd and an initial payment of $123.00. The required minimum was $230.00 so ANICO billed Floyd for the balance of $107.00. Floyd's daughter made a $107.00 cash payment at Leal's office. Floyd kept receiving notices that her insurance policy had been cancelled. About June 19, 1987, Leal met with David Azur, a senior auditor for ANICO's internal security staff. Azur informed Leal about the missing $107.00. Leal acknowledged that he received that money from Floyd on January 12, 1987, and placed it in a cash drawer believing that Karen Brown would purchase a money order and forward it to ANICO. Azur investigated whether other policyholders and potential policyholders in the Port Lavaca area had paid premiums to Leal which had not been received by ANICO. As ANICO learned of policyholders whose premiums had never been received by the company, it paid premium credits and took care of claims out of a special restitution account. When ANICO completed its investigation of Leal, its case report was sent to the State Department of Insurance and to local enforcement agencies for their own independent review.

On September 18, 1987, the Calhoun County Grand Jury returned two indictments against Leal. One was for felony theft with an aggregation of the amounts involved in the alleged thefts.[3] The other was for misapplication of fiduciary property.[4] In both indictments the named complainants were Gladys Floyd, Sylvia Guerrero, Eva Camacho, Jack D. Campbell and Sergio Suarez.

On April 25, 1988, Leal's jury trial on the felony theft indictment commenced but it concluded on April 27, 1988, when the trial court granted Leal's motion for an instructed verdict of not guilty. Sometime later, the district attorney filed a motion to dismiss the second indictment for misapplication of fiduciary property on the basis that there was insufficient evidence to convict. On March 14, 1989, the trial court granted the motion and dismissed the indictment. See TEX.CODE CRIM.PROC.ANN. art. 32.02 (West 1989).

Within the year on March 8, 1990, Leal filed suit against ANICO, Azur, and Karen Brown for malicious prosecution. Subsequently, Leal amended his petition to include other claims not now material to this appeal.

ANICO and Azur filed a motion and a supplemental motion for partial summary judgment on the malicious prosecution claim. They asserted as a defense the one-year limitation period which they contended barred Leal's claim. See TEX.CIV.PRAC. & REM.CODE ANN. § 16.002(a) (Vernon Supp. 1996) (providing that a person must bring suit for malicious prosecution not later than one year after the day the cause of action accrues.) They also asserted that they were entitled to a judgment as a matter of law because the dismissal of the second indictment did not constitute a favorable termi-

---

**3.** See TEX.PENAL CODE ANN. §§ 31.03, 31.09 (Vernon 1994). For the sake of convenience, the current code provisions are cited. The applicable law would have been that in effect at the time of the alleged offense.

**4.** See TEX.PENAL CODE ANN. § 32.45 (Vernon 1994). The current code provision is cited only for convenience. The applicable law would have been the statute in effect at time of the alleged offense.

nation of that prosecution and that one essential element of malicious prosecution could not be established. Leal filed a response to the motions for partial summary judgment. The trial court, after a hearing, granted the partial summary judgment. The trial court's order did specify the basis or grounds relied upon for the ruling. The cause was later set upon the dismissal docket. When Leal did not appear, the trial court entered a "final take nothing" judgment. This appeal followed.

### Standard of Review

■ To prevail on a summary judgment motion, a movant must establish that there is no genuine issue concerning any material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). A defendant who conclusively negates at least one of the essential elements of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to a summary judgment. *Wornick Co. v. Casas*, 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310–11 (Tex.1984). In reviewing a summary judgment, this court must accept as true evidence in favor of the nonmovant indulging every reasonable inference and resolving all doubt in the nonmovant's favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

■ The statute of limitations is an affirmative defense. TEX.R.CIV.P. 94; *Woods v. William M. Mercer Inc.*, 769 S.W.2d 515, 517 (Tex.1988). Defendants who move for summary judgment based upon the affirmative defense of limitations bear the burden of pleading and conclusively establishing that defense as a matter of law. *Id.* at 517; *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex. 1983).

By points of error one and two, Leal asserts that 1) limitations did not begin to run on his malicious prosecution claim until both indictments were terminated in his favor and the cause of action was instituted within the one year limitation period, or in the alternative, a fact question was raised on this issue,

and 2) the State's dismissal of the second indictment on the basis of insufficient evidence terminated the prosecution in his favor, or alternatively, fact questions were raised on this issue. He thus contends that the summary judgment was erroneously granted.

### Did Limitations Bar the Suit?

Leal argues that appellees' action resulted in the return of two indictments against him for felony theft and misapplication of fiduciary property based upon the same conduct and with the same named complainants. The indictments are part of the summary judgment proof.

■ Leal was acquitted by an instructed verdict of not guilty on the felony theft charge on April 27, 1988. The second indictment was dismissed on March 14, 1989, and the instant lawsuit was filed on March 8, 1990, less than one year after the dismissal of the second indictment. Leal contends that his malicious prosecution claim accrued on March 14, 1989 when the last indictment was dismissed and the suit was timely brought before the expiration of the one-year indictment period. *See* TEX.CIV.PRAC. & REM.CODE ANN. § 16.002(a). Limitations begin to run from the time the right of action accrues. *Atkins v. Crosland*, 417 S.W.2d 150, 152 (Tex.1967); *Warnecke v. Broad*, 138 Tex. 631, 161 S.W.2d 453, 454 (1942). Leal's malicious prosecution claims accrued upon the termination of the criminal prosecution. *Patrick v. Howard*, 904 S.W.2d 941, 944 (Tex.App.—Austin 1995, no writ).

■ In determining the nature of the termination necessary for the accrual, we find the opinion in *Sullivan v. O'Brien*, 85 S.W.2d 1106 (Tex.Civ.App.—San Antonio 1935, writ ref'd), instructive. There the court stated that:

It seems well settled that the termination contemplated does not mean the end of the purpose or intention to prosecute, or a final adjudication of the accused person's guilt or innocence, but means rather, the termination of the particular prosecution, or proceeding, complained of, so that, if the prosecutor intends to proceed further in

his purpose, he must institute proceedings de novo, or, as sometimes said, is "put to a new proceeding." [citations omitted].

*Sullivan,* 85 S.W.2d at 1115.

 This holding means that for the purposes of a malicious prosecution action, the prosecution ends when the formal proceedings are terminated, not when the prosecution finally decides that it no longer desires to pursue the matter. The law seems easy enough to apply when there is a single prosecution, but multiple indictments or pleadings present another problem. In *Sullivan,* the court held that where indictments were returned against twin brothers for 161 separate, distinct offenses of embezzlement of distinct separate sums of money, the statute of limitations began to run on the brothers' cause of action for malicious prosecution upon the termination of each of the 161 offenses and not when the last indictment was dismissed. *Sullivan,* 85 S.W.2d at 1115–16. It appears to be the appropriate rule, however, that when multiple indictments are sought for the same act or acts, the cause of action for malicious prosecution accrues when the last indictment is dismissed. The filing of a malicious prosecution claim at any time before such date would be premature. *Browning–Ferris Indus., Inc. v. Lieck,* 845 S.W.2d 926, 950 (Tex.App.—Corpus Christi 1992), *rev'd on other grounds,* 881 S.W.2d 288 (Tex.1994). When two indictments are returned on the same set of facts, the quashing or disposition of one without disposing of the other indictment is not the termination of the prosecution in favor of the accused within the meaning of the rule relating to malicious prosecution. *See* 42 Am.Jur.2d, *Malicious Prosecution* § 32 at 207 (1970).

 In the instant case, the two indictments involved the same complainants, the same sums of money the same acts and the same set of facts. We conclude that the cause of action did not accrue until the dismissal of the second indictment on March 14, 1989.

The instant lawsuit was filed on March 8, 1990 within the one-year period of limitations. Thus, the first basis or ground for the granting of the summary judgment—an affirmative defense of limitations—must fail.

## DISMISSAL OF SECOND INDICT-MENT—NOT A FAVORABLE TERMINATION?

The second ground urged by appellees for the granting of the summary judgment was that the dismissal of the second indictment on the basis of insufficient evidence did not terminate the prosecution in Leal's favor and that one of the essential elements of malicious prosecution could not be established.

 The elements of a cause of action for malicious prosecution are: 1) the commencement of a criminal prosecution against the plaintiff; 2) which has been caused by the defendant or through the defendant's aid or cooperation; 3) which terminated in the plaintiff's favor; 4) that the plaintiff was innocent; 5) that there was no probable cause for the proceedings; 6) that it was done with malice; and 7) that it damaged the plaintiff. *Lieck,* 845 S.W.2d at 949; *Ellis v. Sinton Savings Association,* 455 S.W.2d 834, 836 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n.r.e.) ANICO and Azur contend that the dismissal of a criminal prosecution brought about by the procurement or compromise of the person accused is not such an end of the prosecution as will warrant an action for damages for malicious prosecution. *Ellis,* 455 S.W.2d at 842; *Sullivan,* 85 S.W.2d at 1115. They rely upon summary judgment proof in the form of a deposition of Mark Kelly, the district attorney at the times in question. Kelly acknowledged that between the time of the acquittal on the first indictment and March 1989, he had several conversations with Leal's counsel about the pending misapplication of fiduciary property indictment, that Leal's counsel had provided certain documents and had requested a dismissal of the indictment. The record reflects:

Q. After those numerous such requests, did you finally agree to dismiss the indictment against him [Leal] for misapplication of fiduciary property?

A. Yes, sir.

Leal, however, calls attention to the deposition where Kelly testified that the indictment was dismissed because of insufficient evidence and that his decision on this matter

was reached after reviewing the file, talking with the prosecutor in the first trial, and concluding in his own opinion that "the criminal conviction might not be successful." It is clear from the summary judgment proof that ANICO and Azur did not establish that there was no genuine issue of material fact as to this element of Leal's cause of action and that they were entitled to a summary judgment as a matter of law.

### Double Jeopardy

ANICO and Azur do urge that the summary judgment record establishes that a trial on the second indictment was a legal impossibility because of the double jeopardy doctrine. See U.S. Const. Amends. V, XIV; Tex. Const. art. I, § 14. They contend that even if the district attorney had not dismissed the second indictment, the trial court was deprived of jurisdiction because the double jeopardy doctrine prohibits successive prosecutions for the same offense. ANICO and Azur argue that the two indictments were for the same offense or conduct and that the acquittal on the trial of the felony theft indictment prohibited litigation of the other indictment, albeit jeopardy was not raised or adjudicated.

 Specific "grounds" for summary judgment must be expressly presented in the summary judgment motion itself and not in a brief filed contemporaneously with the motion or in the summary judgment evidence. *McConnell v. Southside Independent School District*, 858 S.W.2d 337, 341 (Tex.1993). The double jeopardy "ground" was not expressly presented in the instant summary judgment motion. ANICO and Azur recognize this fact but claim that the double jeopardy argument falls under the basis or "ground" expressly presented in the motion that the second prosecution did not terminate favorable to Leal. We do not agree. If it could validly argue otherwise, ANICO and Azur do not explain how the doctrine of double jeopardy is applicable where the issue was not asserted by Leal or adjudicated by the trial court. Nevertheless, ANICO and Azur argue that both indictments involved the same conduct and that double jeopardy rendered the second prosecution an impossi-

bility, citing *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *Grady*'s "same conduct" test was overruled in *United States v. Dixon*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), leaving the test in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), as the sole test for determining whether a prosecution violates the protection against successive prosecution in the double jeopardy context. *Parrish v. State*, 869 S.W.2d 352, 353 (Tex.Crim.App.1994). *Flores v. State*, 906 S.W.2d 133, 137 (Tex. App.—San Antonio 1995, no pet.) To apply the same elements test of *Blockburger*, courts must examine the statutes that define each offense to see whether each statute required proof of an additional fact or element the other does not. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182; *Flores*, 906 S.W.2d at 136. In *Talamantez v. State*, 790 S.W.2d 33, 37 (Tex.App.—San Antonio 1990, pet. ref'd), the court compared the elements of the offenses of theft and misapplication of fiduciary property. It is clear from that opinion that the elements of the two offenses are not the same and that the statutes are "aimed at different classes of persons." *Id.* at 37. The Blockburger test itself would not have prevented successive prosecutions. ANICO and Azur did not meet the burden cast on movants for a summary judgment even if it could be said that "double jeopardy" was included as a "ground" in the summary judgment motions.

We affirm the judgment in part that disposes of the claims of libel, defamation, and breach of the duty of good faith and fair dealing and "all remaining claims." We reverse the judgment in part as it grants the summary judgment relating to the malicious prosecution claims and remand those claims to the trial court.